**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCE OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS PLAN IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TACTICAL INTERMEDIATE | ) | |
| HOLDINGS, INC., *et al.*,[1] | ) | Case No. 14-11659(KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

# FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF TACTICAL INTERMEDIATE HOLDINGS, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

## SEPTEMBER 26, 2014

KLEHR HARRISON HARVEY
BRANZBURG LLP

Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
919 Market Street, Suite 1000
Wilmington, DE 19801
Telephone: (302) 426-1189
Facsimile: (302) 426-9193
Email:    dpacitti@klehr.com
Email:    myurkewicz@klehr.com

KLEHR HARRISON HARVEY
BRANZBURG LLP

Morton R. Branzburg *(admitted pro hac vice)*
1835 Market Street, Suite 1400
Philadelphia, PA 19103
Telephone: (215) 569-2700
Facsimile:  (215) 568-6603
Email:    mbranzburg@klehr.com

*Counsel for the Debtors
and Debtors-in-Possession*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Tactical Intermediate Holdings, Inc. (4895); Tactical Holdings Operations, Inc. (8504); Wellco Enterprises, Inc. (9274); Ro-Search Incorporated (6293); Mo-Ka Shoe Corporation (2446); Altama Delta Corporation (6369); Altama Delta (Puerto Rico) Corporation (3459); Massif Holdings LLC (1692); and Massif Mountain Gear Company L.L.C. (9717). The address of the Debtors' corporate headquarters is 5968 Commerce Blvd., Morristown, TN 37814.

## INTRODUCTION

Tactical Intermediate Holdings, Inc., Tactical Holdings Operations, Inc., Wellco Enterprises, Inc., Ro-Search Incorporated, Mo-Ka Shoe Corporation, Altama Delta Corporation, Altama Delta (Puerto Rico) Corporation, Massif Holdings LLC, and Massif Mountain Gear Company L.L.C. (collectively, the *"Debtors"*), as debtors and debtors-in-possession in the above-captioned chapter 11 cases, hereby propose the following first amended chapter 11 plan of liquidation pursuant to the provisions of chapter 11 of the Bankruptcy Code.

For a discussion of the Debtors' history, businesses, properties, key contracts, and a summary and analysis of the Plan, stakeholders of the Debtors should review the Disclosure Statement filed with the Bankruptcy Court to which the Plan is attached.    ALL CLAIMHOLDERS AND INTERESTHOLDERS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

The Plan provides for the liquidation and conversion of all of the Debtors' remaining assets to Cash and the distribution of the net proceeds realized therefrom to creditors holding Allowed Claims as of the Record Date in accordance with the relative priorities established in the Bankruptcy Code. The Plan does not provide for a distribution to Interestholders, and their votes are not being solicited. The Plan contemplates the appointment of a Plan Administrator to, among other things, resolve Disputed Claims, pursue any unreleased causes of action, implement the terms of the Plan and make Distributions.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from a Claimholder until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to Claimholders.

The Debtors expressly reserve their right to alter, amend or modify the Plan, one or more times, before its substantial consummation, subject to the consent of the Prepetition Senior Secured Lender (as defined below) and the Secured Noteholder (as defined below) and  the restrictions on modification set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and otherwise set forth in this Plan.

**NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE BANKRUPTCY COURT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCE OR REJECTION OF THE PLAN.**

**THE CREDITORS' COMMITTEE ENDORSES THE PLAN AND RECOMMENDS THAT ALL HOLDERS OF GENERAL UNSECURED CLAIMS VOTE TO ACCEPT THE PLAN AND THE RELEASES SET FORTH HEREIN.**

## ARTICLE I

### A.    Scope of Definitions

All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in Article 1 of the Plan. Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

### B.    Definitions

1.1    *Intentionally Omitted*

1.2    *"Administrative Claim"* means a claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, but not limited to, (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estates and operating the businesses of the Debtors, including wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Cases, (b) Professional Claims, and (c) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, and all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546(c)(2)(A) of the Bankruptcy Code.

1.3    *"Administrative Reserve"* means a reserve in the amount of $250,000 established for payment of incurred and anticipated reasonable and necessary expenses of administering and winding down the Chapter 11 Cases following the sales of the Massif Assets and the Footwear Assets, which amount was funded from Cash Sale Proceeds of the sale of the Massif Assets at the closing thereof, and which funds shall, until the Effective Date, continue to be Cash Collateral subject to the cash collateral terms and provisions of the DIP Order. From and after the Effective Date, any funds remaining in the Administrative Reserve that are not utilized to administer and wind down the Chapter 11 Cases or to pay the expenses of the Plan Administrator shall be distributed as part the Class 5 Distribution Amount, as set forth in Section 5.5 of the Plan.

1.4    *"Administrative Tax Claim"* means a claim for any tax of a kind specified in section 503(b)(1)(B) and (C) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code.

1.5    *"Allowed Claim" and "Allowed Interest"* means a Claim or Interest or any portion thereof (a) that has been allowed by a Final Order, or (b) as to which, on or by the Effective Date, (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is Scheduled, other than a Claim or Interest that is Scheduled in an unknown amount or as disputed, or (c) for which a proof of claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its

3

allowance has been settled or withdrawn, or has been denied by a Final Order, or (d) that is expressly allowed in a liquidated amount in the Plan. The amount of an Allowed Claim or Allowed Interest shall be the lesser of the amount stated in a proof of claim filed for such Claim or Interest (if less than the amount Scheduled for such Claim or Interest), the amount agreed to in a written settlement, or the amount allowed by a Final Order. All distributions on account of an Allowed Claim or Allowed Interest will be made to the Claimholder or Interestholder of record on the Record Date.

> 1.6 *"Allowed [ ] Claim"* and *"Allowed [ ] Interest"* means an Allowed Claim or Allowed Interest of the type described.

> 1.7 *"Assets"* means all of the right, title and interest of the Debtors in and to property of whatever type or nature (real, personal, mixed, tangible or intangible), including property of each Debtors' Estate.

> 1.8 *"Avoidance Actions"* means, unless otherwise released under a prior Order of the Bankruptcy Court or under the Plan, Causes of Action against Persons arising under sections 502, 510, 541, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Avoidance Actions.

> 1.9 *"B Holders"* means Jeffrey K. Roberts, Christopher Wasgatt, Randy Benham and Christopher A. Amen, as Trustee of the Christine A. Amend Living Trust.

> 1.10 *"Ballot"* means each of the ballot forms that are distributed with the Disclosure Statement to Claimholders with Claims in Classes that are impaired under the Plan and entitled to vote under Article IV hereof in connection with the solicitation of acceptances of the Plan.

> 1.11 *"Bankruptcy Code"* means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §§ 101, et seq.

> 1.12 *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Delaware or such other court as may have jurisdiction over the Chapter 11 Cases.

> 1.13 *"Bankruptcy Rules"* means (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, (b) the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and (c) the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

> 1.14 *"Bar Date"* means the date or dates to be established by the Bankruptcy Court by which Proofs of Claim must be filed.

> 1.15 *"Business Day"* means any day, excluding Saturdays, Sundays and legal holidays, on which commercial banks are open for business in Wilmington, Delaware.

4

1.16    *"Cash"* means currency, a certified check, cashier's check or wire transfer of good funds from any source.

1.17    *"Cash Collateral"* has the meaning assigned to such term in section 363(a) of the Bankruptcy Code.

1.18    *"Causes of Action"* means, unless otherwise released under a prior Order of the Bankruptcy Court or under the Plan, any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

1.19    *"Chapter 11 Cases"* means the Debtors' bankruptcy cases pending in the Bankruptcy Court and being jointly administered with one another as case number 14-11659(KG) and *"Chapter 11 Case"* means any one of the Chapter 11 Cases.

1.20    *"Claim*" means a claim against any one of the Debtors, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

1.21    *"Claims Agent"* means Prime Clerk, LLC, the claims and noticing agent of the Debtors.

1.22    *"Claimholder"* means a holder of a Claim.

1.23    *"Class"* means a category of Claimholders or Interestholders described in Article III of the Plan.

1.24    *"Class 5 Distribution Amount"* means the aggregate net distribution amount equal to the sum of (a) $150,000 (to be funded on the Effective Date by the Prepetition Senior Secured Lender), plus (b) $150,000 (to be funded on the Effective Date by the Secured Noteholder or the Sponsor), plus (c) any amounts remaining in the Administrative Reserve, if any, on the Final Distribution Date after payment of (i) all disbursements pursuant to Article II of the Plan and (ii) all fees and expenses incurred by the Plan Administrator after the Effective Date, plus (d) the Net Recoveries of Avoidance Actions or Third Party Claims not otherwise released by the Debtors under this Plan or the DIP Order, if any, to be paid to holders of Allowed Class 5 General Unsecured Claims as set forth in Section 5.5 of the Plan.

1.25    *"Confirmation Date"* means the date of entry of the Confirmation Order.

1.26    *"Confirmation Hearing"* means the hearing before the Bankruptcy Court on confirmation of the Plan and related matters under section 1128 of the Bankruptcy Code.

1.27    *"Confirmation Hearing Notice"* means the notice of, among other things, the time for submitting Ballots to accept or reject the Plan, the date, time and place of the Confirmation Hearing and the time for filing objections to the confirmation of the Plan.

5

1.28     ***"Confirmation Order"*** means the order entered by the Bankruptcy Court confirming in all respects all of the provisions, terms and conditions of this Plan.

1.29     ***"Creditors' Committee"*** means the Official Committee of Unsecured Creditors consisting of the Persons appointed to such Committee in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code and their appointed successors, as amended from time to time.

1.30     ***"Cure"*** means with respect to the assumption and assignment of an executory contract or unexpired lease pursuant to section 365(b) of the Bankruptcy Code, (a) the distribution of Cash by the Debtors at or before the closing of the Asset Sale, or (b) payment of Cash by the assignee, in an amount equal to all due and payable unpaid monetary obligations, without interest, under such executory contract or unexpired lease, or such other amount as may be agreed upon by the parties to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

1.31     ***"Debtors"*** shall have the meaning ascribed thereto in the Introduction.

1.32     ***"Deficiency Claim"*** means, as to a Secured Creditor, that portion of such Secured Creditor's Allowed Secured Claim not paid or satisfied from the proceeds of any sale or other disposition of the Debtors' assets or return of such Secured Creditor's collateral; and, as to any other creditor asserting a claim that is subject to a lien or security interest in property of the Estates, such Claim to the extent it is (a) rendered an unsecured claim by virtue of section 506(a) of the Bankruptcy Code and (b) otherwise determined to be an Allowed Claim.

1.33     ***"DIP Budget"*** means the Approved Budget attached as Exhibit A to the DIP Facility Credit Agreement or DIP Order as amended from time to time.

1.34     ***"DIP Budget Account"*** means an account to be established and maintained with DIP Lender and to be funded by the Final DIP Advance in an amount equal to the aggregate amount of all DIP Budget Items.

1.35     ***"DIP Budget Item"*** means an item included in the DIP Budget that remains unpaid on the Confirmation Date, but excluding any amount budgeted for payment of Professional Claims.

1.36     ***"DIP Budget Item List"*** means the list of all DIP Budget Items as set forth in the Plan Supplement.

1.37     ***"DIP Facility"*** means that senior secured superpriority debtor-in-possession credit facility provided pursuant to the DIP Facility Credit Agreement.

1.38     ***"DIP Facility Claim"*** means any Claim derived from, or based upon, relating to, or arising from, the DIP Facility Credit Agreement.

1.39     ***"DIP Facility Credit Agreement"*** means the agreement governing the DIP Facility, date as of July 8, 2014 among the Debtors and the DIP Lender (as amended, pursuant to the First Amendment to Debtor-In-Possession Loan and Security Agreement dated as

6

of September 3, 2014 and as further amended, restated, supplemented or otherwise modified from time to time), as well as any other documents entered into in connection therewith.

1.40 "*DIP Lender*" means Wells Fargo Bank, National Association, together with its successors and assigns.

1.41 "*DIP Order*" means the interim order entered in the Chapter 11 Cases at Docket Number 56 and the final order entered in the Chapter 11 Cases at Docket Number 158, authorizing, *inter alia*, the Debtors to enter into the DIP Facility Credit Agreement and incur the postpetition obligations thereunder (as further amended, restated, supplemented or otherwise modified from time to time), and under which the Prepetition Secured Lender Challenge Period (defined therein) and Subordinated Debt Challenge Period (defined therein) have expired.

1.42 "*Disallowed Claim*" means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order or (b) is Scheduled at zero or as contingent, disputed or unliquidated and as to which a proof of claim bar date has been established, but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.43 "*Disclosure Statement*" means the written disclosure statement that relates to the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified or supplemented from time to time.

1.44 "*Disclosure Statement Approval Order*" means a Final Order approving, among other things, the Disclosure Statement.

1.45 "*Disputed Claim*" means a Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, a Claim that (a) has not been Scheduled or is Scheduled by the Debtors as unknown or as contingent, unliquidated or disputed for which a proof of claim has been filed or (b) is the subject of an objection filed with the Bankruptcy Court and which objection has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

1.46 "*Distribution Dates*" means collectively, the First Distribution Date, any Subsequent Distribution Date and the Final Distribution Date.

1.47 "*Distribution Record Date*" or "*Record Date*" means the date that is two (2) Business Days after the entry of an order by the Bankruptcy Court approving the Disclosure Statement.

1.48 "*Distribution Reserve*" means Cash from the Plan Administrator in an amount equal to the distribution or distributions under applicable classes of Claims that shall be made on account of Disputed Claims when allowed, which Cash will be held by the Plan Administrator pending allowance of Disputed Claims, and then distributed on account of Allowed Claims in accordance with Section 8.6(a) of the Plan. The Distribution Reserve for any

7

Disputed Class 5 General Unsecured Claims shall be funded solely from the Class 5 Distribution Amount and the Distribution Reserve for any other Claim shall be funded from the Administrative Reserve or other Plan Assets.

1.49    ***"Effective Date"*** means the first Business Day on which the conditions precedent set forth in Sections 10.2 of this Plan have been satisfied or waived as provided in Section 10.3 hereof.

1.50    ***"Estates"*** means as to each Debtor the bankruptcy estate of the Debtor arising pursuant to section 541 of the Bankruptcy Code.

1.51    "***Exculpated Claim***"  means any Claim related to any act or omission derived from, based upon, related to or arising from the Debtors' in or out-of-court restructuring efforts, the Chapter 11 Cases, including the negotiation, formulation, preparation or performance of the DIP Loan Facility, the Plan Support Agreement, the liquidation of assets, formulation, preparation, dissemination, negotiation, filing, confirmation, approval, implementation or administration of the Disclosure Statement, the Plan (including any term sheets related thereto), the property to be distributed under the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation and Consummation and the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement.

1.52    "***Exculpated Party***" means each of: (a) the Debtors; (b) the DIP Lender; (c) the Prepetition Senior Secured Lender; (e) the Secured Noteholder; (f) the Sponsor; (g) the Creditors' Committee and with respect to clauses (a) through (g) such entities' predecessors, successors and assigns, subsidiaries, affiliates, beneficial owners, managed accounts or funds, current and former officers, directors, principals, shareholders, direct and indirect equity holders, members, partners (general and limited), employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other Professionals.   Notwithstanding the above definition, "Exculpated Party" shall specifically exclude Vincent Ferguson, Matthew Ferguson, Kerry Ferguson and Neil Streeter.

1.53    ***"Exhibit"*** means an exhibit annexed to the Plan.

1.54    ***"Face Amount"*** means (a) when used in reference to a Disputed or Disallowed Claim, the full stated amount claimed by the Claimholder in any proof of claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

1.55    ***"Final DIP Advance"*** means the final advance on the DIP Facility to be made on the Effective Date to fund (a) the DIP Budget Account and (b) a contribution in the amount of $92,000 to the Holdback Escrow Account. For the avoidance of doubt, the amount of the Final DIP Advance plus the amount of all other outstanding obligations under the DIP Facility shall not exceed the Facility Cap (as defined in the DIP Facility Credit Agreement).

8

1.56    ***"Final Distribution Date"*** means the date(s) on which a final Distribution of Plan Assets or Class 5 Distribution Amount, as applicable, to Holders of Allowed Claims entitled to Distributions therefrom. The Final Distribution Date(s) shall be one or more dates, as determined by the Plan Administrator, with the consent of the Prepetition Senior Secured Lender, and in consultation with the Plan Administrator Oversight Committee, which is after the liquidation into Cash of all Plan Assets of the Debtors (other than those assets abandoned by the Debtors or the Plan Administrator, as applicable) and the collection of other sums due or otherwise remitted or returned to the Estates.

1.57    ***"Final Distribution Report"*** shall have the meaning set forth in Section 8.11 of the Plan.

1.58    ***"Final Order"*** means an order or judgment, the operation or effect of which has not been stayed, reversed or amended and as to which order or judgment (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

1.59    ***"First Distribution Date"*** means with respect to a Claim that is Allowed as of the Effective Date, the Effective Date or the date that is as soon as reasonably practicable after the Effective Date.

1.60    ***"Footwear Assets"*** means substantially all of the assets of all Debtors other than Massif Mountain Gear Company, L.L.C.

1.61    ***"Footwear Sale Motion"*** means, the Debtors' Combined Motion for Orders (A)(I) Approving Bidding Procedures in connection with the Sale of Substantially All Their Footwear Assets by Public Auction; (II) Scheduling a Hearing to Consider the Sale of the Footwear Assets; and (III) Approving the Form and Manner of Notices Thereof; (B)(I) Authorizing and Approving the Sale of Footwear Assets Free and Clear of Liens, Claims, Encumbrances and Interests; and (II) Approving the Assumption and Assignment of Potential Designated Certain Executory Contracts and Unexpired Leases; and (C) Granting Other Relief, filed on July 8, 2014 at Docket No. 14 in the Chapter 11 Cases.

1.62    ***"Footwear Sale Order"*** means the order approving the sale of the Footwear Assets pursuant to Footwear Sale Motion entered in the Chapter 11 Cases at Docket No. 150.

1.63    ***"General Unsecured Claim"*** means a Claim that is not an Administrative Claim, Priority Claim, Secured Claim or Miscellaneous Secured Claim, and specifically includes, without limitation, any unsecured Deficiency Claim of any holder of a Miscellaneous Secured Claim, the unsecured Deficiency Claim of the Prepetition Senior Secured Lender and the unsecured Deficiency Claim of the Secured Noteholder.

1.64    ***"Holdback Amount"*** means the amount estimated by the Debtors funded solely from the Professional Fee Escrow Account to be used to pay the Allowed Professional

9

Claims of a Professional Person retained by the Debtors or Creditors' Committee and the Claims Agent.

1.65    ***"Holdback Escrow Account"*** means the escrow account established by the Debtors into which Cash equal to the Holdback Amount shall be deposited on the Effective Date for the payment of Allowed Professional Claims that are subject to the Professional Fee Escrow Account and the Claims Agent to the extent not previously paid or disallowed.

1.66    ***"Impaired"*** refers to any Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.67    ***"Interest"*** means the rights of any current or former holder or owner of any shares of common stock, preferred stock or any other equity securities of the Debtors authorized and issued prior to the Confirmation Date, exclusive of any such interests held in treasury by the Debtors, and the rights of any member of the limited liability company Debtors.

1.68    ***"Interestholder"*** means a holder of an Interest.

1.69    ***"Internal Revenue Code"*** means the Internal Revenue Code of 1986, as amended.

1.70    *"Massif Asset Purchase Agreement"* means that certain Asset Purchase Agreement for the sale of the Massif Assets dated as of August 20, 2014 by and between Samtech, LLC, a California limited liability company, as purchaser, and Debtor Massif Mountain Gear Company, L.L.C., an Oregon limited liability company, as seller, a copy of which was filed in the Chapter 11 Cases at Docket Number 221.

1.71    *"Massif Assets"* means substantially all assets of Massif Mountain Gear Company, L.L.C.

1.72    ***"Massif Sale Motion"*** means the Debtors' Motion to Approve (A) Stalking Horse Purchase Agreement; (B) Approving, Subject to Higher or Better Offers, Sale of Substantially all of the Assets of Debtor Massif Mountain Gear Company, L.L.C. Pursuant to Section 363 of the Bankruptcy Code Free and Clear of all Liens, Claims, Interests and Encumbrances; (C) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code; (D) Authorizing the Debtors to Consummate Transactions Related to the Above; and (E) Granting Other Relief, filed on July 8, 2014 at Docket Number 29 in the Chapter 11 Cases.

1.73    ***"Massif Sale Order"*** means the order of the Bankruptcy Court approving the sale of the Massif Assets pursuant to Massif Asset Purchase Agreement entered in the Chapter 11 Cases on August 22, 2014 at Docket Number 225.

1.74    ***"Miscellaneous Secured Claim"*** means any Secured Claim other than the DIP Facility Claim, the Prepetition Senior Secured Claim, and the Secured Claim of the Secured Noteholder, whether by operation of law, contract or otherwise, but solely to the extent of the value, as of the Effective Date, or such other date as is established by the Bankruptcy

10

Court, of such security interest or lien after giving effect to all security interests or liens senior in priority

1.75   *"Net Recoveries"* shall mean the net proceeds of the liquidation of the Assets of the Debtors after payment of all necessary and actual fees and expenses associated with the liquidation of such Assets.

1.76   *"Non-Debtor Parent"* means Tactical Holdings, Inc.

1.77   *"Person"* means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity.

1.78   *"Petition Date"* means, as to each Debtor, July 8, 2014, which is the date on which each Debtor filed its petition commencing its Chapter 11 Case.

1.79   *"Plan"* means the first amended plan which is herein jointly proposed by the Debtors, as consolidated entities, for the resolution of outstanding Claims and Interests in the Chapter 11 Cases, as such plan may be amended or modified from time to time in accordance with the Bankruptcy Code and subject to consent of the Prepetition Senior Secured Lender and the Secured Noteholder.

1.80   *"Plan Administrator"* means Paul Collins and any successor appointed by the Plan Administrator Oversight Committee pursuant to the Plan Administrator Agreement.

1.81   *"Plan Administrator Agreement"* means the agreement, established as of the Effective Date, setting forth the terms and conditions of the Plan Administrator, in substantially the form to be attached hereto as Exhibit A and filed with the Plan Supplement.

1.82   *"Plan Administrator Oversight Committee"* shall mean a committee consisting of the remaining members of the Creditors' Committee whom shall oversee and consult with the Plan Administrator as set forth in this Plan and the Plan Administrator Agreement.

1.83   *"Plan Assets"* means all Net Recoveries of the liquidation of the Debtors' Assets from any source, but excluding any Sale Proceeds and the Class 5 Distribution Amount.

1.84   *"Plan Supplement"* means the compilation of documents and forms of documents, schedules and Exhibits to the Plan to be Filed no later than seven days before the Confirmation Hearing, which documents shall be in form and substance acceptable to the Prepetition Senior Secured Lender and Secured Noteholder, in consultation with the Creditors' Committee, on notice to parties in interest, and additional documents Filed before the Effective Date as supplements or amendments to the Plan Supplement (all in form and substance acceptable to the Prepetition Senior Secured Lender and Secured Noteholder, in consultation with the Creditors' Committee). The Debtors shall have the right to amend the documents contained in, and Exhibits to, the Plan Supplement through the Effective Date with the consent of the Prepetition Senior Secured Lender and Secured Noteholder.

11

1.85    *"Plan Support Agreement"* means the Plan Support Agreement entered into as of July 7, 2014 by and among the Debtors (with the support of the Non-Debtor Parent and the Sponsor), the Prepetition Senior Secured Lender and the Secured Noteholder.

1.86    *"Post-Effective Date Claims"* means all Claims against and obligations incurred by the Plan Administrator on and after the Effective Date other than the Administrative Claims and Claims and Interests treated in Classes 1 through 6 of the Plan.

1.87    "*Prepetition Senior Secured Credit Agreement*" means the Amended and Restated Loan and Security Agreement by and among the Borrower and the Prepetition Senior Secured Lender, dated as of July 12, 2013 (as amended, restated, supplemented or otherwise modified from time to time).

1.88    *"Prepetition Senior Secured Credit Facility"* means that certain prepetition senior secured credit facility established by the Prepetition Senior Secured Credit Agreement.

1.89    *"Prepetition Senior Secured Claim"* means those claims held by the Prepetition Senior Secured Lender on account of amounts owed under the Prepetition Senior Secured Credit Facility. Pursuant to the DIP Order, the Prepetition Senior Secured Claim is an Allowed Claim in the amount of $48,208.493.86.

1.90    *"Prepetition Senior Secured Lender"* means Wells Fargo Bank, National Association, together with its successors and assigns.

1.91    *"Priority Non-Tax Claim"* means any Claim of a kind specified in section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code other than an Administrative Claim.

1.92    *"Priority Tax Claim"* means any Claim of a governmental unit of the kind specified in sections 502(i) or 507(a)(8) of the Bankruptcy Code.

1.93    *"Pro Rata"* means, at any time, the proportion that the Face Amount of a Claim in a particular Class bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class, unless the Plan provides otherwise.

1.94    *"Professional Claim"* means a Claim of a professional retained in the Chapter 11 Cases pursuant to sections 327, 328 and 1103 of the Bankruptcy Code, or otherwise, for compensation or reimbursement of costs and expenses relating to services rendered after the Petition Date and prior to and including the Effective Date.

1.95    *"Professional Claim Bar Date"* shall have the meaning set forth in Section 2.1(a) of the Plan.

1.96    *"Professional Fee Escrow Account"* means the escrow account established pursuant to the DIP Order and funded by the Debtors and maintained by counsel to the Debtors for payment of Professional Claims.

12

1.97    *"Professional Fee Order"* means an order or orders establishing procedures for the interim compensation for Professionals that may be entered by the Bankruptcy Court.

1.98    *"Record Date"* or *"Distribution Record Date"* means the date that is two (2) Business Days after the entry of an order by the Bankruptcy Court approving the Disclosure Statement.

1.99    *"Released Party"* means each of: (a) the Debtors; (b) the Non-Debtor Parent; (c) the DIP Lender; (d) the Prepetition Senior Secured Lender; (e) the Secured Noteholder; (f) the Sponsor; (g) the B Holders, (h) the Creditors' Committee and with respect to clauses (a) through (h) such entities predecessors, successors and assigns, parents, subsidiaries, affiliates, beneficial owners, managed accounts or funds, current and former officers, directors (including officers and directors of any of the Non-Debtor Parent), principals, shareholders, direct and indirect equity holders, members, partners (general and limited), employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other Professionals. Notwithstanding the above definition, "Released Party" shall specifically exclude Vincent Ferguson, Matthew Ferguson, Kerry Ferguson and Neil Streeter.

1.100    *"Sale Proceeds"* means, collectively, the proceeds received from the consummation of any sale approved by the Massif Sale Order and/or Footwear Sale Order net of ordinary and customary seller costs of closing, fees payable to seller's investment banker, Houlihan Lokey Capital, Inc. on account of the closing of such sale, seller's pro rata share of accrued and unpaid real and personal property ad valorem taxes on the assets sold, and applicable state and local transfer taxes, if any, payable by seller on account of the sale of such assets.

1.101    *"Scheduled"* means, with respect to any Claim or Interest, the status and amount, if any, of such Claim or Interest as set forth in the Schedules.

1.102    *"Schedules"* means the schedules of assets and liabilities filed in the Bankruptcy Court by the Debtors, as such schedules have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

1.103    *"Section 503 Deadline"* shall have the meaning ascribed thereto in Section 2.3 of the Plan.

1.104    *"Secured Claim"* means a Claim secured by a properly perfected and unavoidable security interest in or lien upon property of the Estates to the extent of the value of such security interest or lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtors and the Claimholder. Without limiting the generality of the foregoing, the DIP Facility Claim, the Prepetition Senior Secured Claim and the Secured Noteholder Claim shall be deemed to be a Secured Claim to the extent of the value of the property of the Estates that secure such Claim.

13

1.105    *"Secured Creditor"* means any Creditor that holds a Secured Claim.

1.106    *"Secured Note Documents"* means all documents relating to the 12% Secured Promissory Noted in the original face amount of $7,000,000 issued by the Debtors to GGC Tactical Debt Holdings, LLC.

1.107    *"Secured Noteholder"* means GGC Tactical Debt Holdings, LLC, together with its successors and assigns.

1.108    *"Secured Noteholder Claim"* means the Secured Claim held by the Secured Noteholder on account of amounts owed under the Secured Note Documents. The Secured Noteholder Claim is an Allowed Claim in the amount of $8,660,000.

1.109    *"Sponsor"* means Golden Gate Private Equity, Inc., Golden Gate Capital Management, L.L.C., Golden Gate Capital Management II, L.L.C., GGC Administration, L.L.C., Golden Gate Capital Investment Fund II, L.P., Golden Gate Capital Investment Fund II-A, L.P., Golden Gate Capital Investment Fund II, (AI) L.P., Golden Gate Capital Investment Fund II-A, (AI) L.P., Golden Gate Capital Associates II-QP, L.L.C., Golden Gate Capital Associates II-AI, L.L.C., CCG AV, L.L.C. (with respect to Series A, Series C and Series I of CCG AV, L.L.C.), GGC Opportunity Fund Management GP, Ltd., GGC Opportunity Fund Management, L.P., Golden Gate Capital Opportunity Fund, L.P., Golden Gate Capital Opportunity Fund-A, L.P., GGCOF Co-Invest, L.P. and GGCOF Third-Party Co-Invest, L.P.

1.110    *"Subsequent Distribution Date"* means any date, as determined by the Plan Administrator, with the consent of the Prepetition Senior Secured Lender, and in consultation with the Plan Administrator Oversight Committee, which is after the First Distribution Date and prior to the Final Distribution Date, on which the Plan Administrator commences a Distribution to Holders of Allowed Claims pursuant to the Plan.

1.111    *"Tax Refunds"* means the Claim of a Debtor for a refund of state or federal income taxes other than any refund of state income taxes received by a Debtor prior to the Petition Date.

1.112    *"Third Party Claim"* means a claim that is an Avoidance Action or other cause of action of one or more Debtors as of the Effective Date against any Person not otherwise released under a prior Order of the Bankruptcy Court or under the Plan.

1.113    *"Unimpaired"* refers to any Claim or Interest which is not Impaired.

## C.    Rules of Interpretation: Application of Definitions, Rules of Construction, and Computation of Time

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter. For purposes of the Plan: (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the document shall be substantially in that form or substantially on those terms and

14

conditions; (b) any reference in the Plan to an existing document or exhibit filed or to be filed means the document or exhibit as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in the Plan to Sections, Schedules, and Exhibits are references to sections, schedules, and exhibits of or to the Plan. Unless otherwise specified, the words "herein," "hereof," "hereto," "hereunder," and other words of similar meaning refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of the Plan. The headings in the Plan are for convenience of reference only and shall not expand, limit, or otherwise affect the provisions of the Plan. Unless otherwise indicated herein, all references to dollars are to United States dollars. Unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## D.    Exhibits

All Exhibits are incorporated into and are a part of the Plan as if set forth in full herein and as may be filed with the Plan Supplement.

## ARTICLE II
## ADMINISTRATIVE CLAIMS

2.1    ***DIP Facility Claim.***    To the extent not earlier paid, any amounts outstanding under the DIP Facility shall be paid in full in cash on the Effective Date, and as of the Effective Date, the DIP Lender shall have no further obligation to make any advances under the DIP Facility. Except for the payments expressly referenced in the proviso at the conclusion of this sentence, under no circumstances shall the DIP Lender or the Prepetition Senior Secured Lender be required to pay, nor shall any Sale Proceeds be used to pay, any Administrative Claim, Administrative Reserve, Administrative Tax Claim, Cure, Distribution Reserve, Priority Non-Tax Claim, Priority Tax Claim, Professional Claim or any other Claim with a priority junior to the DIP Facility Claim and the Prepetition Senior Secured Claim; provided, however, (i) the DIP Lender shall make advances by and through the DIP Facility and in amounts not to exceed the amounts specified in the DIP Budget subject to the terms and conditions of the DIP Facility, (ii) on the Effective Date, the Prepetition Secured Lender shall pay $150,000 to fund the Class 5 Distribution Amount and $232,000 to fund the Holdback Escrow Account. In addition, nothing in the Plan shall be construed to reduce, diminish or offset the distribution to which the DIP Lender is entitled to receive under the Plan, and no portion of the distribution to which DIP Lender is entitled under the Plan may be used for payment or satisfaction of any other Claim with a priority junior to the DIP Facility Claim and the Prepetition Senior Secured Claim.

2.2    ***Administrative Claims - Professional Claims.***

(a)    ***Final Fee Applications***.    All final requests for payment of Professional Claims must be filed no later than fifteen (15) days after the Effective Date (the ***"Professional Claim Bar Date"***). After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior orders of the Bankruptcy Court, the allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court, and the balance due thereon shall thereafter be immediately paid in full in Cash by the Debtors from

15

the Holdback Escrow Account to the extent such Professional Claims are entitled to be paid from the Professional Fee Escrow Account.

(b)     ***Holdback Escrow Account.***    The Debtors' counsel shall maintain the Holdback Escrow Account. On the Effective Date, the Debtors shall fund the Holdback Escrow Account with the Holdback Amount, and the Prepetition Senior Secured Lender shall make an additional payment of $232,000 to the Holdback Escrow Account. The unpaid balance of Allowed Professional Claims shall be paid by the Debtors from the Holdback Escrow Account. All amounts remaining in the Holdback Escrow Account after payment of such Professional Claims, if any, shall be distributed to Prepetition Senior Secured Lender.

(c)     ***Payment of Interim Amounts.***    The provisions of the Professional Fee Order shall remain in effect as to amounts owing to professionals prior to the Effective Date.

(d)     ***Post-Effective Date Services.***    After the Effective Date, any requirement that Professionals comply with the Professional Fee Order or sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate. The Plan Administrator shall pay any Professionals for Post-Effective Date services from the Administrative Reserve.

2.3     ***Administrative Claims - Substantial Contribution Compensation and Expenses Bar Date.***    Any person or entity who requests compensation or expense reimbursement for making a substantial contribution ("***Substantial Contribution Claim***") in the Chapter 11 Cases pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code must file an application with the clerk of the Bankruptcy Court on or before a date that is thirty (30) days subsequent to the Effective Date (the "***Section 503 Deadline***") and serve such application on counsel for the Debtors, counsel for the Prepetition Senior Secured Lender, counsel for the Secured Noteholder, counsel for the Creditors' Committee and on all other parties as otherwise required by the Bankruptcy Court and the Bankruptcy Code on or before the Section 503 Deadline, or be forever barred from seeking such compensation or expense reimbursement. All Allowed Substantial Contribution Claims shall be paid by the Plan Administrator from the Administrative Reserve within thirty (30) days of allowance by the Bankruptcy Court.

2.4     ***Administrative Claims – Allowed Claims under section 503(b)(9) of the Bankruptcy Code.***    Allowed Administrative Claims under section 503(b)(9) of the Bankruptcy Code shall be paid by the Plan Administrator from the Administrative Reserve, the DIP Budget Account (it being understood that funds in the DIP Budget Account shall be used solely to pay DIP Budget Items up to the amount provided for such DIP Budget Item in the DIP Budget Item List), or other Plan Assets within thirty (30) days of allowance by the Bankruptcy Court.

2.5     ***Administrative Claims – Allowed Administrative Tax Claims under section 503(b)(1)(B) and (C) of the Bankruptcy Code.***    Allowed Administrative Claims under section 503(b)(1)(B) and (C) of the Bankruptcy Code shall be paid by the Plan Administrator from the Administrative Reserve, the DIP Budget Account (it being understood that funds in the DIP Budget Account shall be used solely to pay DIP Budget Items up to the amount provided for such DIP Budget Item in the DIP Budget Item List), or other Plan Assets as soon as practicable after the Effective Date.

16

2.6    ***Administrative Claims - Ordinary Course Expenses.***    Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases shall be paid by the Plan Administrator from the Administrative Reserve, the DIP Budget Account (it being understood that funds in the DIP Budget Account shall be used solely to pay DIP Budget Items up to the amount provided for such DIP Budget Item in the DIP Budget Item List), or other Plan Assets in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.

2.7    ***Other Administrative Claims Bar Date.***    All requests for payment of an Administrative Claim other than Professional Claims, DIP Facility Claims, Administrative Tax Claims under sections 503(b)(1)(B) and (c), and amounts owed to the Office of the United States Trustee, and as set forth in Sections 2.3, 2.4, and 2.6 of the Plan incurred on or after August 29, 2014 must be filed with the Bankruptcy Court and served on counsel to the Debtors and counsel to the Plan Administrator no later than thirty (30) days after the Effective Date. Unless the Plan Administrator objects to an Administrative Claim within ninety (90) days after the Effective Date, such Administrative Claim shall be deemed allowed in the amount requested. In the event that the Plan Administrator objects to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim. All such Allowed Administrative Claims shall be paid by the Plan Administrator from the Administrative Reserve, the DIP Budget Account (it being understood that funds in the DIP Budget Account shall be used solely to pay DIP Budget Items up to the amount provided for such DIP Budget Item in the DIP Budget Item List), or other Plan Assets within thirty (30) days of allowance by the Bankruptcy Court.

2.8    ***Priority Tax Claims.***    On the Effective Date, or as soon as practicable after a Priority Tax Claim becomes an Allowed Claim if the date of allowance is later than the Effective Date, each holder of an Allowed Priority Tax Claim against any of the Debtors shall be paid by the Plan Administrator in full in cash from the Administrative Reserve, the DIP Budget Account (it being understood that funds in the DIP Budget Account shall be used solely to pay DIP Budget Items up to the amount provided for such DIP Budget Item in the DIP Budget Item List), or other Plan Assets.

2.9    ***Remaining Cash.***    After the payment in full of all Allowed Administrative Claims, any Cash remaining in the Administrative Reserve after the final payment of such Administrative Claims and Allowed Priority Tax Claims shall be used by the Plan Administrator for the payment of any Post-Effective Date Claims. Any funds remaining in the Administrative Reserve on the Final Distribution Date shall be distributed by the Plan Administrator to holders of Allowed Class 5 General Unsecured Claims. After payment of the DIP Budget Items, any funds remaining in the DIP Budget Account shall be distributed by the Plan Administrator to the Prepetition Senior Secured Lender.

### ARTICLE III
### CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Interests in the Debtors. A Claim or Interest is placed in a particular Class for the purposes of voting on the Plan and receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in

that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and their treatment is set forth in Article 2 above.

This Plan provides for the substantive consolidation of the Debtors. All Allowed Claims and Allowed Interests are consolidated into the Classes set forth below.

| 3.1 | *Class 1.* | Class 1 consists of the Prepetition Senior Secured Claim |
| 3.2 | *Class 2.* | Class 2 consists of the Secured Noteholder Claim |
| 3.3 | *Class 3.* | Class 3 consists of all Miscellaneous Secured Claims. |
| 3.4 | *Class 4* | Class 4 consists of all Priority Non-Tax Claims. |
| 3.5 | *Class 5* | Class 5 consists of all General Unsecured Claims, including all Deficiency Claims. |
| 3.6 | *Class 6* | Class 6 consists of all Interests. |

## ARTICLE IV
## IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN

4.1     ***Unimpaired Classes of Claims and Interests.***  Class 4 Priority Non-Tax Claims is not Impaired by the Plan.

4.2     ***Impaired Classes of Claims and Interests Entitled to Vote.***  Class 1 Prepetition Senior Secured Financing Claim, Class 2 Secured Noteholder Claim, Class 3 Miscellaneous Secured Claims, and the Class 5 General Unsecured Claims are Impaired under the Plan and are entitled to vote on the Plan.

4.3     ***Impaired Classes of Claims and Interests Deemed to Have Rejected the Plan.***  Class 6 Interests are Impaired under the Plan, shall receive no distributions under the Plan on account of their Interests and are deemed to have rejected the Plan.

## ARTICLE V
## PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS

5.1     ***Class 1 (Prepetition Senior Secured Claim).***  The Holder of the Prepetition Senior Secured Claim shall, after payment in full of the DIP Facility Claim, (i) retain without provision or condition all Cash Sale Proceeds from the sale of the Massif Assets distributed to the Prepetition Senior Secured Lender at the closing of such sale, and all Cash Sale Proceeds from the sale of the Footwear Assets distributed to the Prepetition Senior Secured

18

Lender at the closing of such sale; (ii) to the extent not previously paid, receive payment of (A) the balance of all funds held in the Quarantined Inventory Escrow Account (as defined in the DIP Order) upon the payment to the DoD (as defined in the DIP Order) of proceeds from the sale of Quarantined Inventory (as defined in the DIP Order) of an amount equal to at least $290,000, (B) the balance of the $100,000 escrow fund established pursuant to paragraph 38 of the DIP Order upon the earlier of the completion of the sale of all Quarantined Inventory or the date that is six months after the closing of the sale of the Footwear Assets, and (C) the balance of any funds held in the IBM Escrow Account and the Capps Bailee Equipment Escrow Account (in each case as defined in the Footwear Sale Order) after payment of amounts required to be made therefrom; (iii) be assigned all rights of the seller to receive any future payment or other consideration owed to the seller under the Massif Asset Purchase Agreement, including, without limitation the seller's right to payment of the Earn-Out Amount pursuant to Section 3.6 of the Massif Asset Purchase Agreement; (iv) receive payment of all funds remaining in the Professional Fee Escrow Account and Holdback Escrow Account after payment of all Professional Claims; (v) the balance of any funds in the DIP Budget Account after payment of all DIP Budget Items; (vi) fifty per cent (50%) of any Net Recoveries from the sale of Quarantined Inventory (as defined in the DIP Order) in excess of $800,000; (vii) any other Plan Assets remaining after payment of all Claims payable under Article II of the Plan; and (viii) receive relief from the automatic stay or other appropriate authority to pursue state law enforcement remedies against collateral for the Prepetition Senior Secured Credit Facility that has not been liquidated or collected as of the Effective Date. However, for purposes of voting, the Prepetition Senior Secured Claim shall be considered an Allowed Claim with the value of $13,000,000 for voting under Class 1 of this Plan and $35,208,493.86 for voting its Deficiency Claim in Class 5 of this Plan. To the extent the Class 1 Claim is not paid in full, the Deficiency Claim of the Prepetition Senior Secured Lender shall be treated as an Allowed Class 5 General Unsecured Claim for voting purposes only and shall not be entitled to any distribution from the Class 5 Distribution Amount. Nothing in the Plan shall be construed to reduce, diminish or offset the distribution to which the Prepetition Senior Secured Lender is entitled to receive under the Plan, and no portion of the distribution to which Prepetition Senior Secured Lender is entitled under the Plan may be used for payment or satisfaction of any other Claim with a priority junior to the Prepetition Senior Secured Claim. For avoidance of doubt, the Prepetition Senior Secured Lender is only entitled to payment on account of its Prepetition Senior Secured Claim up to the amount of its Allowed Prepetition Senior Secured Claim.

5.2 ***Class 2 (Secured Noteholder Claim).*** Only in the event that all obligations owed under the Prepetition Senior Secured Credit Facility are indefeasibly paid in full, the Holder of the Secured Noteholder Claim shall, receive payment in cash, after payment of the DIP Facility Claim, the Professional Claims, all Administrative Claims, all Priority Claims (including but not limited to Class 4 Priority Non-Tax Claims), the Distribution Reserves and the Class 1 Prepetition Senior Secured Claim, the remaining Plan Assets on the First Distribution Date. If such Plan Assets are insufficient to satisfy the Secured Noteholder in full, the Holder of the Secured Noteholder Claim shall receive the Plan Assets distributed by the Plan Administrator upon each Subsequent Distribution Date and the Final Distribution Date until the Secured Noteholder is satisfied in full. However, for purposes of voting, the Secured Noteholder Claim shall be considered an Allowed Claim with the value of $1 for voting under Class 2 of this Plan and $8,660,000 for voting its Deficiency Claim in Class 5 of this Plan. To the extent the Class 2

19

Claim is not paid in full, the Deficiency Claim of the Secured Noteholder shall be treated as an Allowed Class 5 General Unsecured Claim for voting purposes only and shall not be entitled to any distribution from the Class 5 Distribution Amount.

      5.3     ***Class 3 (Miscellaneous Secured Claims).***  Except to the extent that a Holder of an Allowed Class 3 Claim agrees to a less favorable treatment, the holder of each Allowed Class 3 Claim shall receive at the discretion of the Plan Administrator from the Plan Assets: (i) Cash in an amount equal to the lesser of (a) the amount of Allowed Secured Claim and (b) the value of the Debtors' property securing such Allowed Secured Claim currently in the possession of the Debtors minus the amount of claims secured by such property with legal priority senior to the lien priority of the holder of such Allowed Class 3 Claim; (ii) delivery of the property securing such Allowed Class 3 Claim; or (iii) other treatment such that the Allowed Class 3 Claim shall be rendered Unimpaired. Any Allowed Deficiency Claim of a Holder of an Allowed Class 3 Claim shall be treated as a Class 5 General Unsecured Claim.

      5.4     ***Class 4 (Priority Non-Tax Claims).***  Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, each Holder of such Allowed Priority Non-Tax Claim shall be paid in full in Cash on or as soon as practicable after the Effective Date. Allowed Priority Non-Tax Claims shall be paid as soon as reasonably practicable after the reconciliation of all Disputed Priority Non-Tax Claims.

      5.5     ***Class 5 (General Unsecured Claims).***  Except to the extent that a Holder of an Allowed Class 5 General Unsecured Claim agrees to a less favorable treatment, the holders of each Allowed Class 5 General Unsecured Claim shall receive its Pro Rata share of the Class 5 Distribution Amount. As part of the settlement embodied in the Plan, in no event shall Kirkland & Ellis LLP, the Holders of Class 1 Claims or the Holders of Class 2 Claims be deemed to hold an Allowed Class 5 General Unsecured Claim for distribution purposes.

      5.6     ***Class 6 (Interests).***  The holders of the Allowed Interests and Claims in Class 5 shall have their Interests against the Debtors extinguished as of the Effective Date and shall receive no distributions under this Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

After the Effective Date, the Plan shall be implemented as follows:

      6.1     ***Revesting of Assets.***  Except as otherwise expressly provided in this Plan, on the Effective Date, title to all Assets and property of the Debtors shall not revest in the Reorganized Debtors and shall not be released or waived. Rather, the Debtors' Assets shall remain property of the Estate of the Debtors. The Plan Administrator, after consultation with the Plan Administrator Oversight Committee, may affect the dissolution of any one or more of the Debtors at any time after the Effective Date.

6.2    *The Plan Administrator.*

(a)    <u>Appointment of the Plan Administrator</u>. As of the Effective Date, the Plan Administrator shall be vested with full legal power, capacity and authority, and shall be directed to administer, collect and liquidate the Debtors' remaining Assets and to implement the Plan. The Plan Administrator shall be Paul Collins under the Plan and Plan Administrator Agreement and approved by the Bankruptcy Court without bond, unless otherwise ordered by the Bankruptcy Court.

(b)    <u>Powers of the Plan Administrator</u>. The Plan Administrator shall be deemed to be a judicial substitute for each of the Debtors as the party-in-interest in these Bankruptcy Cases, under the Plan or in any judicial proceeding or appeal to which the Debtor is a party, consistent with section 1123 (b)(3)(B) of the Bankruptcy Code and section 303 of the Delaware General Corporation Law, and is appointed as the representative of the Estates for all purposes, including for the retention and enforcement of all claims and rights, known and unknown, which arose prior to the Confirmation Date. On the Effective Date, the current officers and directors of each of the Debtors shall be deemed to have resigned and shall be fully discharged from their responsibilities and duties as officers and directors of the Debtors. In general and subject to the protective provisions in the Plan, the Plan Administrator shall act for the Debtors and their respective estates in a fiduciary capacity as applicable to a board of directors.

(c)    <u>Authorization</u>. The Plan Administrator shall be empowered and authorized to, among other things: (a) collect and liquidate the Debtors' remaining Assets; (b) make the distributions required under the Plan; (c) retain and/or employ professionals, subject to the consent of the Plan Administrator Oversight Committee; (d) exercise all power and authority that may be exercised by any officer, director or Holder of an Interest in such Debtor with like effect as if authorized, exercised and taken by unanimous consent of such officers, directors or Holders of Interests including, without limitation, amending any Debtor's organizational documents or dissolving any Debtor; (e) pursue objections to, and estimations and settlements of, Claims, in accordance with section 6.2(d) of the Plan; (f) prosecute, to the extent not otherwise released herein, any causes of action of the Estates, including, subject to the provisions of the DIP Order, Avoidance Actions not otherwise released under this Plan, if any, in accordance with section 6.2(e) of the Plan; (g) calculate and implement all distributions to be made under this Plan to Creditors holding Allowed Claims; (h) market, sell, lease or otherwise disposing of or realizing the value of all Assets; (i) file all required tax returns and paying taxes and all other obligations on behalf of the Debtors; (j) file required operating reports; (k) subject to consultation with the Prepetition Senior Secured Lender, take all actions required by the Massif Asset Purchase Agreement in connection with the novation of government contracts; (l) subject to consultation with the Prepetition Senior Secured Lender, take actions on behalf of the Debtors for purposes of determining the Earn-Out Amount under the Massif Asset Purchase Agreement; and/or (m) take all other actions required under the Plan to complete the liquidation, dissolution and wind-up of the Debtors in accordance with applicable non-bankruptcy law, the Plan and the Plan Administrator Agreement. For the avoidance of doubt, neither the Debtors nor the Plan Administrator shall commence, litigate, prosecute and/or settle any Causes of Action against general unsecured creditors arising from or related to section 547 of the Bankruptcy Code.

21

(d)     Claims Reconciliation and Administration. The Plan Administrator may review, object to, prosecute, negotiate, estimate, settle or otherwise compromise any Claims in his discretion, subject to (i) the consent of the Plan Administrator Oversight Committee solely with respect to the settlement or compromise of any General Unsecured Claim with a claimed value in excess of $10,000.00, and (ii) the consent of the Prepetition Secured Lender and the Secured Noteholder solely with respect to the settlement or compromise of any other Claim with a claimed total value in excess of $10,000.00. Any settlement or compromise of a Disputed Claim made by the Plan Administrator resulting in the allowance of a Claim against the Estates in an amount equal to or greater than $25,000.00 shall be made in accordance with Bankruptcy Rule 9019.

(e)     Causes of Action or Other Avoidance Actions Not Released Under the Plan. The Plan Administrator may review, object to, prosecute, negotiate, settle or otherwise compromise any pending Causes of Action or other Avoidance Actions not otherwise released under this Plan, subject to the consent of (i) the Prepetition Senior Secured Lender (with respect to any claim or cause of action that may generate proceeds constituting Cash Collateral of the Prepetition Senior Secured Lender), and (ii) the Plan Administrator Oversight Committee (with respect to General Unsecured Claims and Avoidance Actions or Third Party Claims not otherwise released under this Plan or the DIP Order), in each case in accordance with Bankruptcy Rule 9019.  For the avoidance of doubt, neither the Debtors nor the Plan Administrator shall commence, litigate, prosecute and/or settle any Causes of Action against general unsecured creditors arising from or related to section 547 of the Bankruptcy Code. The powers granted to the Plan Administrator shall be exercisable without further approval of the Court and for avoidance of doubt, the Plan Administrator shall have no power, standing or authority to review, object to, prosecute, negotiate, settle or otherwise compromise any Claims, pending causes of action, Third Party Claims or other Avoidance Actions otherwise released under a prior Order of the Bankruptcy Court or under the Plan.

(f)     Liquidation of Assets. The Plan Administrator shall pursue recovery of Assets  under the Plan in a commercially reasonable manner.

(g)     Disbursing Agent. The Plan Administrator shall serve as or may select the Disbursing Agent under the Plan. If the Plan Administrator determines to select a Disbursing Agent, he shall do so with consultation and input from the Plan Administrator Oversight Committee. If the Plan Administrator neither serves as nor selects a Disbursing Agent, counsel to the Plan Administrator, if any, shall select a Disbursing Agent with consultation and input from the Plan Administrator Oversight Committee.

(h)     Compensation of the Plan Administrator's Professionals. The Plan Administrator may compensate professionals retained by the Plan Administrator at the rates agreed upon by and between the Plan Administrator and his retained professionals, subject to review of the Plan Administrator Oversight Committee and Prepetition Senior Secured Lender as set forth herein.  The Plan Administrator shall provide to the Plan Administrator Oversight Committee and Prepetition Senior Secured Lender bills from the Plan Administrator's professionals for services performed and expenses to be reimbursed.  In the event the Plan Administrator Oversight Committee or Prepetition Senior Secured Lender objects to the compensation or reimbursement requested within ten (10) business days of service of the bill, the

22

matter shall be presented to the Bankruptcy Court for determination. If no objection is made within the allotted time, the Plan Administrator may make payment to his professionals without further order of the Court. The Plan Administrator shall maintain appropriate reserves to fund confirmation administrative expenses, post-confirmation administrative expenses, and operating expenses during the implementation of the Plan. Such reserves shall be established in consultation with the Plan Administrator Oversight Committee and Prepetition Senior Secured Lender.

(i)     Execution of Documents. The Debtors (or the Plan Administrator on behalf of the Debtors) may execute any and all documents and instruments necessary to effectuate the provisions of the Plan.

(j)     Standard of Care and Exculpation. The Plan Administrator, its professionals and its employees are exonerated, held harmless and indemnified by the Debtors and their Estates for any act or omission in respect of the Plan Administrator's duties under the Plan, except for gross negligence and willful misconduct (and may, but are not required to, maintain insurance for the purpose of such indemnification), as set forth in a Plan Administrator Agreement.

(k)     Compliance with DIP Budget Item List. On the first day of the month following the Effective Date, and on the first day of each month thereafter, the Plan Administrator shall provide a list of the DIP Budget Items paid during the prior month to the Prepetition Senior Secured Lender and the Plan Administrator Oversight Committee. The Plan Administrator shall further provide such additional information regarding the status of the DIP Budget Items from time to time as Prepetition Senior Secured Lender may reasonably request.

(l)     Consultation with Prepetition Senior Secured Lender. The Plan Administrator shall, subject to consultation with Prepetition Senior Secured Lender, take all actions required by the Massif Asset Purchase Agreement in connection with the novation of government contracts and take all actions on behalf of the Debtors for purposes of determining the Earn-Out Amount under the Massif Asset Purchase Agreement. In connection with the foregoing, the Plan Administrators shall take all such actions as Prepetition Senior Secured Lender may reasonably request.

6.3     ***Plan Administrator Oversight Committee.***

(a)     Plan Administrator Oversight Committee. On the Effective Date, the Plan Administrator Oversight Committee consisting of the remaining members of the Creditors' Committee shall be established and shall have the rights set forth in this Plan and the Plan Administrator Agreement.

(b)     Authority and Responsibility. The Plan Administrator Oversight Committee shall have all authority and responsibility set forth in the Plan and Plan Administrator Agreement. The Plan Administrator Oversight Committee shall have the authority and responsibility to oversee, review, and guide the activities and performance of the Plan Administrator and shall have the authority to remove the Plan Administrator in accordance with section 4.1 of the Plan Administrator Agreement.

(c)     Appointment of Successor Plan Administrator.   Upon the resignation, death or removal of the Plan Administrator, the Plan Administrator Oversight Committee shall appoint the successor Plan Administrator subject to approval of the Prepetition Senior Secured Lender, which approval shall not be unreasonably withheld.   In its discretion, the Plan Administrator Oversight Committee may appoint an interim plan administrator pending its appointment of a permanent successor plan administrator.

(d)     Meetings of the Plan Administrator Oversight Committee. Meetings of the Plan Administrator Oversight Committee are to be held with such frequency as the Plan Administrator and Members may determine in their reasonable discretion.

(e)     Tenure of Members of the Plan Administrator Oversight Committee.  The authority of the Members will be effective as of the Effective Date and will remain and continue in full force and effect until termination of the Plan Administrator Agreement as set forth in Article VI of the Plan Administrator Agreement.

(f)     Resignation.  A Member may resign by giving not less than (10) days' prior written notice thereof to the Plan Administrator and other Members.  Such resignation shall become effective on the later to occur of: (i) the day specified in such notice; and (ii) the appointment of a successor in accordance with section 6.3(h) below.

(g)     Removal.  A Member may be removed with a unanimous vote of the other Members and the Trustee, written resolution of which shall be delivered to the removed Member; provided, however, that such removal may only be made for cause.

(h)     Appointment of Successor Plan Administrator Oversight Committee Member.  In the event of a vacancy on the Plan Administrator Oversight Committee (whether by removal, death or resignation), a new Member may be appointed by the remaining Members to fill the position.  If all Members resign at once, the Trustee, with Bankruptcy Court approval, may appoint new Members.

(i)     Reimbursement of Expenses.    The Members shall be entitled to reimbursement of reasonable out-of-pocket expenses incurred in connection with performing their duties hereunder.  At its discretion, a Member may provide to the Plan Administrator an expense reimbursement request for payment. In the event the Plan Administrator objects to the reimbursement being sought by the Member within ten (10) days of service of the expense reimbursement request, the matter shall be presented to the Bankruptcy Court for determination.

(j)     Standard of Care, Indemnification and Exculpation.   In general, and subject to the protective provisions of the Plan, the Plan Administrator Oversight Committee shall exercise its responsibilities under the Plan and Plan Administrator Agreement consistent with fiduciary standards. The Members of the Plan Administrator Oversight Committee shall not be personally liable to the Debtors or to the Holder of any Claim or Interest or to any other person except for such of its or their own acts as shall constitute willful misconduct, gross negligence or fraud. Except for the aforesaid, the Members of the Plan Administrator Oversight Committee are exonerated, held harmless and indemnified, in accordance with the Plan. Persons seeking to assert claims against the Members shall have recourse only against the Debtors'

24

Assets and the proceeds thereof, and any insurance purchased with the proceeds of any of the Debtors' Assets, except for acts or omissions of the indemnified Persons that constitute fraud, willful misconduct or gross negligence.

6.4    ***Transfer Taxes.***  Any transfer of the Plan Assets or any portion(s) of the Plan Assets pursuant to the Plan shall constitute a "transfer under a plan" within the purview of section 1146(c) of the Bankruptcy Code and shall not be subject to transfer, stamp or similar Taxes.

6.5    ***Avoidance Actions and other Third Party Claims.***  Except as otherwise expressly provided in this Plan or the Plan Administrator Agreement, the Plan Administrator may pursue any Third Party Claim or Avoidance Action, but is not required to do so, by informal demand and/or by the commencement of litigation.  The Net Recoveries of such Third Party Claims or Avoidance Action will be added to the Class 5 Distribution Amount and distributed in accordance with this Plan and the Plan Administrator Agreement.  For the avoidance of doubt, neither the Debtors nor the Plan Administrator shall commence, litigate, prosecute and/or settle (a) any Causes of Action against general unsecured creditors arising from or related to section 547 of the Bankruptcy Code or (b) any Causes of Action against any Released Party.

6.6    ***Effective Date.***  On the Effective Date, the Plan Administrator shall have the rights and powers set forth herein in order to carry out and implement the purposes and intent of the Plan.

6.7    ***Records.***  The Plan Administrator shall be provided with originals or copies of all documents and business records of the Debtors necessary for the analysis and prosecution of Third Party Claims.  The Plan Administrator shall maintain such records until the earlier of: (i) the Final Distribution Date; or (ii) five years from the effective date of such document.  Thereafter, said records may be destroyed or otherwise disposed of, provided that 20 days prior notice of such intention to dispose of the records shall be provided to the Persons on the Debtors' Bankruptcy Rule 2002 service list.  If the Plan Administrator seeks to destroy or otherwise dispose of any records of the Debtors' Estates prior to the time periods set forth herein, the Plan Administrator shall be entitled to do so upon order of the Bankruptcy Court obtained on motion on twenty days negative notice to the Debtors' Bankruptcy Rule 2002 service list.

6.8    ***Substantial Consummation.***    The Plan shall be deemed to be substantially consummated on the first date distributions are made in accordance with the terms of this Plan to any Claimholders.

## ARTICLE VII
## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

7.1    ***Contracts and Leases.***  On the Effective Date, all Pre-Petition Date executory contracts, employment agreements and unexpired leases other than those leases and contracts that were previously assumed or rejected, except as set forth in Section 7.2 herein, shall be deemed automatically rejected as of that date or such earlier date as the Debtors may have unequivocally terminated such lease or contract. The Confirmation Order shall constitute an

order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code.

7.2     ***Employment, Indemnification and Other Agreements.***     The Plan Administrator may enter into employment, indemnification and other agreements with individuals who may be required to assist the Plan Administrator after the Effective Date. Such agreements, in addition to director and officer liability policies and other insurance policies, shall remain in place after the Effective Date until such time as the Plan Administrator shall determine to either terminate or amend such agreements.

7.3     ***Payments Related to Assumption of Executory Contracts and Unexpired Leases.***     Except with respect to executory contracts and unexpired leases assumed under the prior Court orders, to the extent not already paid prior to plan confirmation, any monetary amounts by which each executory contract and unexpired lease to be assumed may be in default shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by Cure. In the event of a dispute regarding (a) the nature or the amount of any Cure, (b) the ability of any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (c) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order resolving the dispute and approving the assumption and assignment.

7.4     ***Rejection Damages Bar Date.***     If the rejection by the Debtors, pursuant to the Plan or otherwise, of an executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtors, the Plan Administrator or the properties of any of them unless a proof of claim is filed with the clerk of the Bankruptcy Court and served upon counsel to the Debtors and the Plan Administrator within thirty (30) days after entry of an Order authorizing the Debtors to reject an executory contract or unexpired lease; provided, however, that notwithstanding the foregoing, in the case of an executory contract or unexpired lease "deemed rejected" pursuant to Section 7.1 of this Plan which results in a Claim, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Plan Administrator or the properties of any of them unless a proof of claim is filed with the clerk of the Bankruptcy Court and served upon counsel to the Debtors and the Plan Administrator within thirty (30) days after the Effective Date.

7.5     ***Objections to Rejection Damage Claims.***     Objections to proofs of Claim for damages resulting from rejected executory contracts or unexpired leases shall be filed by the Plan Administrator with the Bankruptcy Court any time prior to the later of ninety (90) days after the Effective Date or sixty (60) days following the filing of such proofs of Claim for damages. Said objections shall be served upon the holder of the Claim to which such objection is made (or holder's counsel, when applicable) and any Rejection Claim that is Allowed shall be treated as an Allowed Class 5 General Unsecured Claim in accordance with this Plan.

## ARTICLE VIII
## PROVISIONS GOVERNING DISTRIBUTIONS

8.1     ***Time of Distributions.***     Except as otherwise provided for herein, ordered by the Bankruptcy Court, or otherwise, distributions under the Plan shall be made as soon as is

26

practicable on the later to occur of (a) the Effective Date, (b) the date a Claim becomes an Allowed Claim, or (c) the date that Cash becomes available for distribution to a particular Class pursuant to the treatment of such Class under the Plan. The Plan Administrator shall provide for a holdback of a sufficient amount of Cash, which holdback shall be estimated to be sufficient to satisfy incurred and anticipated Post-Effective Date Claims incurred by the Plan Administrator and to provide for a hold-back with respect to Disputed Claims before making distributions under this Plan. The Plan Administrator may make additional distributions of Cash and property received after the initial distributions. Such additional distributions may be made at such times and in such amounts as determined by the Plan Administrator in consultation with the Plan Administrator Oversight Committee.

8.2 *Interest on Claims.* Unless otherwise specifically provided for in the Plan or Confirmation Order, or as required by section 506 of the Bankruptcy Code, post-Petition Date interest shall not accrue or be paid on Claims, and no Claimholder shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

8.3 *Claims Administration Responsibility.* The Plan Administrator shall retain sole responsibility for administering, disputing, objecting to, compromising or otherwise resolving issues related to distributions to Claimholders.

8.4 *W-9 Forms from Holders of Claims.* The Plan Administrator may issue W-9 Forms to all creditors entitled to distribution to either (i) their last known addresses per the records obtained by the Plan Administrator from the Debtor or (ii) forwarding addresses provided by the United States Postal Service or by creditors themselves. Creditors failing to return completed W-9 Forms to the Plan Administrator within 30 days of the Plan Administrator's request for a completed W-9 Form (or within any further time period expressly agreed to in writing between the Plan Administrator and such Creditor), shall not share in any distribution provided for under the Plan and such Creditor's Claim shall be expunged without further order of the Court.

8.5 *Distribution to General Unsecured Creditors.* The Plan Administrator shall make distributions to Allowed Class 5 Claims, after satisfaction of the Claims in Classes 1, 2 and 3 and Administrative Claims as required by the Plan and setting aside a reserve for expenses of the Plan Administrator, from the remaining Plan Assets.

8.6 *Procedures for Treating and Resolving Disputed Claims. No Distributions Pending Allowance*. Except as set forth in Section 8.6(c) of this Plan, no payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim. All objections to Claims must be filed by the Plan Administrator on or before the Business Day which is one hundred twenty (120) days after the Effective Date, unless such time period is extended by the Bankruptcy Court.

27

(m)    *Distribution Reserve*.    The Plan Administrator will withhold the Distribution Reserve from the property to be distributed under the Plan to Claimholders. The Plan Administrator may request estimation for any Disputed Claim that is contingent or unliquidated, and the Plan Administrator will withhold the Distribution Reserve based upon the estimated amount of each such Claim as determined by the Bankruptcy Court. If the Plan Administrator elects not to request such an estimation from the Bankruptcy Court with respect to a Disputed Claim that is contingent or unliquidated, the Plan Administrator will withhold the Distribution Reserve based upon the appropriate pro rata percentage distribution of the Face Amount of such Claim.

(n)    *Distributions After Allowance*.    Payments and distributions from the Distribution Reserve on account of a Disputed Claim, to the extent that such Disputed Claim ultimately becomes an Allowed Claim, will be made in accordance with provisions of the Plan that govern the Class in which such Claim is classified. Promptly after the date when the order or judgment of the Bankruptcy Court allowing all or part of such Claim becomes a Final Order, the Plan Administrator shall distribute to the holder of such Claim any Cash allocated to such Claim in the Distribution Reserve that would have been distributed on the dates distributions were previously made on account of Allowed Claims had such Claim been an Allowed Claim on such dates. All distributions made under this Section of the Plan on account of an Allowed Claim shall be made as if such Claim had been an Allowed Claim on the dates distributions were previously made to Allowed Claims.

(o)    *Partial Distributions*.    Notwithstanding any other provision of this Plan or the documents referred to by this Plan, the Plan Administrator may make one or more distributions to the holders of Disputed Claims, based on the distributions which such holders would otherwise be entitled to receive based on the undisputed portions of such Disputed Claims if same had not been objected to, if any. This power of direction may not be used to select individual Disputed Claims for payment. The Plan Administrator may make distributions on the undisputed portions of all Disputed Claims, or none at all. Notwithstanding the foregoing, the Plan Administrator may not authorize or pay any distribution to entities who may be liable to the Plan Administrator with respect to a Third Party Claim or otherwise, which Disputed Claim may be paid, if at all, only after the holder of such Disputed Claim has discharged its liability to the Plan Administrator on account of the Third Party Claim or otherwise.

(p)    *Claims Allowable Against Multiple Debtors*.    Notwithstanding anything herein or in the Schedules to the contrary, to the extent a Claimholder has a Claim that is an Allowed Claim against more than one of the Debtors based upon the same ground or theory of liability, such Claim shall only be counted once for determination of distributions under the Plan.

8.7    *Delivery of Distributions.*    Distributions to Allowed Claims, other than Class 1 Claims, shall be delivered by the Plan Administrator (a) to the addresses set forth on the proofs of claim filed by such Claimholders (or at the last known addresses of such Claimholders if no proof of claim is filed or if the Debtors have been notified of a change of address), (b) to the addresses set forth in any written notices of address changes delivered to the Plan Administrator after the date of any related proof of claim, (c) to the addresses reflected in the Schedules if no proof of claim has been filed and the Plan Administrator has not received a written notice of a change of address, or (d) in the case of a Claimholder whose Claim is governed by an agreement

28

and is administered by an agent or servicer, to the agent or servicer which shall then be responsible for making delivery of the distribution to such Claimholder.

8.8     ***Unclaimed or Undeliverable Distributions.*** If the distribution of any Claimholder, other than holders of Class 1 Claims, is returned as undeliverable, no further distributions to such Claimholder shall be made unless and until the Plan Administrator is notified of such Claimholder's then current address, at which time all missed distributions shall be made to such Claimholder without interest. Amounts in respect of undeliverable distributions shall be returned to the Plan Administrator until such distributions are claimed. All claims for undeliverable distributions shall be made on or before the thirtieth (30th) day after the Plan Administrator's final distribution under the Plan. After such date, all property unclaimed by Claimholder shall revert to the Plan Administrator to be redistributed to holders of Allowed Class 5 General Unsecured Claims.

8.9     ***Minimum Distribution.*** Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make distributions of Cash less than $25.00 in value.

8.10    ***Manner of Payment Under this Plan.*** The Cash distributions made pursuant to this Plan shall be made in U.S. dollars by checks drawn on domestic banks selected by the Plan Administrator, as applicable, or by wire transfer from a domestic bank selected at the option of the Plan Administrator.

8.11    ***Final Distribution Report.*** The Plan Administrator shall prepare and file with the Bankruptcy Court a final report (the ***"Final Distribution Report")*** twenty (20) days prior to making the final distribution under this Plan. The report shall disclose the total amount distributed or to be distributed under this Plan.

8.12    ***Post-Final Distribution Assets.*** Any assets received by the Plan Administrator after the filing of the Final Distribution Report shall be tendered to the Holders of Allowed Claims in accordance with the distribution requirements otherwise set forth in this Plan.

## ARTICLE IX
## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

9.1     ***Compromise and Settlement of Claims, Interests and Controversies.*** Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute (a) a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest and (b) a good faith compromise of all Claims and Causes of Action the Debtors, Creditors Committee or any Person that could bring such Cause of Action on their behalf against the Released Parties, as agreed upon by the Debtors, Creditors Committee, Prepetition Senior Secured Lender, DIP Lender, Secured Noteholder and the Sponsor. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a

29

finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and holders, and is fair, equitable and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle Claims against the Debtors and Causes of Action against other Entities.

9.2     *Release of Liens.*  Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Estate and its successors and assigns.

9.3     *Releases by the Debtors.*  **ON THE EFFECTIVE DATE OF THE PLAN, THE RELEASED PARTIES WILL BE EXPRESSLY, UNCONDITIONALLY, GENERALLY AND INDIVIDUALLY AND COLLECTIVELY RELEASED, ACQUITTED AND DISCHARGED BY THE DEBTORS AND THEIR ESTATES FROM ANY AND ALL ACTIONS, CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS OR NON-DEBTOR PARENT, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, BY STATUTE OR OTHERWISE, THAT THE DEBTORS, THE PLAN ADMINISTRATOR, THE DEBTORS' ESTATES OR THEIR AFFILIATES (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER ENTITY, EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' LIQUIDATION, THE CHAPTER 11 CASES, THE PURCHASE, SALE OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR PERFORMANCE OF THE DIP LOAN FACILITY, THE PLAN SUPPORT AGREEMENT, THE PLAN, THE DISCLOSURE STATEMENT OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE RELATING TO THE DEBTORS TAKING PLACE ON OR BEFORE THE CONFIRMATION DATE OF THE PLAN, EXCEPT FOR ANY CLAIMS AND CAUSES OF ACTION FOR ACTUAL FRAUD.**

9.4    *Releases by Holders.* SUBJECT TO THE RIGHT OF EACH HOLDER OF A CLAIM AGAINST THE DEBTOR TO AFFIRMATIVELY 'OPT OUT" OF THE RELEASE SET FORTH BELOW BY NOTING SUCH "OPT OUT" ELECTION ON THE BALLOT TO VOTE ON THE PLAN, ON THE EFFECTIVE DATE OF THE PLAN, EACH HOLDER OF A CLAIM AGAINST OR INTEREST IN THE DEBTORS SHALL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY AND INDIVIDUALLY AND COLLECTIVELY, RELEASED, ACQUITTED AND DISCHARGED THE RELEASED PARTIES (INCLUDING THE RELEASED PARTIES' PREDECESSORS, SUCCESSORS AND ASSIGNS, SUBSIDIARIES, AFFILIATES, MANAGED ACCOUNTS OR FUNDS, CURRENT AND FORMER OFFICERS (SPECIFICALLY EXCLUDING VINCENT FERGUSON, MATTHEW FERGUSON, KERRY FERGUSON AND NEIL STREETER), DIRECTORS, PRINCIPALS, SHAREHOLDERS, DIRECT AND INDIRECT EQUITY HOLDERS, MEMBERS, PARTNERS (GENERAL AND LIMITED), EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS AND OTHER PROFESSIONALS) AND THE RELEASED PARTIES FROM ANY AND ALL ACTIONS, CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS OR NON-DEBTOR PARENT, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, THAT SUCH HOLDER (WHETHER INDIVIDUALLY OR COLLECTIVELY) EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' LIQUIDATION, THE CHAPTER 11 CASES, THE PURCHASE, SALE OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, INCLUDING THE NEGOTIATION, FORMULATION, PREPARATION OR PERFORMANCE OF THE DIP LOAN FACILITY, THE PLAN SUPPORT AGREEMENT, THE PLAN, THE DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE RELATING TO THE DEBTORS TAKING PLACE ON OR BEFORE THE CONFIRMATION DATE OF THE PLAN, EXCEPT FOR ANY CLAIMS AND CAUSES OF ACTION FOR ACTUAL FRAUD.

9.5    *Liabilities to, and Rights of, Governmental Units.* Nothing in the Plan or Confirmation Order shall discharge, release, or preclude:  (1) any liability to a Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising on or after the Confirmation Date; (3) any liability to a Governmental Unit on the part of any Person or Entity

31

other than the Debtors or Plan Administrator; (4) any valid right of setoff or recoupment by a Governmental Unit; or (5) any criminal liability. Nothing in the Plan or Confirmation Order shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence. The discharge and injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, after the Confirmation Date, pursuing any police or regulatory action.

9.6    ***Exculpation.*** **EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM ANY EXCULPATED CLAIM, OBLIGATION, CAUSE OF ACTION OR LIABILITY FOR ANY EXCULPATED CLAIM, EXCEPT FOR GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, BUT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE DEBTORS AND THE PLAN ADMINISTRATOR (AND EACH OF THEIR RESPECTIVE AFFILIATES, AGENTS, DIRECTORS, OFFICERS, EMPLOYEES, ADVISORS AND ATTORNEYS) HAVE PARTICIPATED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF THE SECURITIES PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.**

9.7    ***Injunction.*** **FROM AND AFTER THE EFFECTIVE DATE, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR RELATED DOCUMENTS, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.**

9.8    **FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN ARTICLE IX, THE DEBTORS AND HOLDERS OF CLAIMS OR INTERESTS SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO ARTICLE VIII.**

9.9    **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR RELATED DOCUMENTS, OR IN OBLIGATIONS ISSUED PURSUANT TO**

32

THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED OR DISCHARGED PURSUANT TO ARTICLE 9.3 OR ARTICLE 9.4, OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE 9.6 ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (4) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.

9.10    THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS, PROPERTY OR ESTATES.  ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED AND DISCHARGED, AND THE INTERESTS SHALL BE CANCELLED.

9.11    EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS SHALL BE FULLY RELEASED, AND THE INTERESTS SHALL BE CANCELLED, AND THE DEBTORS' LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.

9.12    ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS, THE DEBTORS' ESTATES, THE CREDITORS' COMMITTEE THE PLAN ADMINISTRATOR, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

9.13     **Term of Injunctions or Stays.**  Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.    All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

9.14     **No Liability for Solicitation or Participation.**  As specified in section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code are not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale or purchase of securities.

9.15     **Compromises and Settlements.**  Pursuant to Bankruptcy Rule 9019(a), the Debtors may compromise and settle various (a) Claims against them, and (b) claims that they have against other Persons.  The Debtors expressly reserve the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle up to and including the Effective Date, Claims against them and claims that they may have against other Persons.  After the Effective Date, such right shall pass exclusively to the Plan Administrator to which such claims shall be conveyed pursuant to the Plan, and in accordance with Section 9.1 of the Plan.

9.16     **Cancellation of Agreements.**  On the Effective Date, except to the extent of a right to receive a distribution under this Plan and as otherwise provided herein, any note, bond, Indentures or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors shall be deemed automatically cancelled; *provided, however*, that each agreement that governs the rights of the Claimholder and that is administered by an agent or a servicer, shall continue in effect solely for the purposes of allowing such agent or servicer to make the distributions to be made on account of such Claims or Interests under the Plan.

9.17     **Objections to Claims.**    The failure by the Debtors or the Plan Administrator to object to, or examine, any Claim or Interest for purposes of voting shall not be deemed a waiver of any such entities' right to object to (to the extent of any Claim that is not expressly Allowed in the Plan) or reexamine the Claim or Interest in whole or in part for any other purpose, including, but not limited to, distribution of property.

## ARTICLE X
## CONDITIONS PRECEDENT

10.1     **Conditions to Confirmation.**  The following is a condition precedent to confirmation of the Plan that may be satisfied or waived in accordance with Section 10.3 of the Plan:

(a)     The Confirmation Order shall be in form and substance reasonably acceptable to the Debtors, the Prepetition Senior Secured Lender and the Secured Noteholder, in consultation with the Creditors' Committee.

10.2     ***Conditions to Effective Date.***  The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Section 10.3 of the Plan:

(a)     The Confirmation Order shall have been entered by the Bankruptcy Court and such Confirmation Order and become a Final Order (unless the Final Order requirement is waived by the Debtors, Prepetition Senior Secured Lender, Secured Noteholder and Creditors' Committee);

(b)     No stay shall be in effect with respect to the Confirmation Order;

(c)     The Plan Administrator Agreement has been executed (no later than 30 days after entry of the Confirmation Order); and

(d)     The Debtors shall be in compliance with the DIP Budget.

10.3     ***Waiver of Conditions to Confirmation and Effective Date.***  The conditions set forth in Sections 10.1 and 10.2 of the Plan may be waived by the Debtors with the consent of the Prepetition Senior Secured Lender and the Secured Noteholder, and in consultation with the Creditors' Committee, without any notice to parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtors with the consent of the Prepetition Senior Secured Lender and Secured Noteholder regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors). The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## ARTICLE XI
## RETENTION OF JURISDICTION

11.1     Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan, including, among other things, the following matters:

(a)     to hear and determine pending motions for the assumption and assignment of or rejection of executory contracts or unexpired leases to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear and determine the allowance of Claims resulting therefrom, including the amount of Cure, if any, required to be paid in connection with such assumption and assignment;

(b)     to adjudicate any and all adversary proceedings, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or the Plan, including, without limitation, any actions to recover any transfers, assets, properties or

35

damages to which the Debtors may be entitled under applicable contract provisions, the provisions of this Plan or under applicable provisions of the Bankruptcy Code or any other federal, state or local laws;

(c)     to ensure that distributions to Allowed Claimholders and Allowed Interestholders are accomplished as provided herein;

(d)     to hear and determine any and all objections to the allowance or estimation of Claims and Interests filed both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and to allow or disallow any Claim or Interest in whole or in part;

(e)     to determine requests for the payment of Claims entitled to priority under section 507(a)(1) of the Bankruptcy Code, including compensation of and reimbursement of expenses of parties entitled thereto;

(f)     to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g)     to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan or regarding the rights of the Plan Administrator and/or the Plan Administrator Oversight Committee;

(h)     to issue orders in aid of execution, implementation or consummation of the Plan;

(i)     to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(j)     to hear and determine all applications for compensation and reimbursement of Professional Claims under the Plan or under sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

(k)     to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(l)     to hear any other matter not inconsistent with the Bankruptcy Code;

(q)     to hear and determine all disputes involving the existence, nature or scope of the releases provided for in the Plan;

(r)     to hear and determine any Claims of or against the Debtors;

(s)     to enforce all orders previously entered by the Bankruptcy Court; and

(t)     to enter a final decree closing the Chapter 11 Cases.

Notwithstanding anything contained herein to the contrary and only to the extent the Bankruptcy Court has previously ordered otherwise, the Bankruptcy Court retains exclusive jurisdiction to hear and determine disputes concerning Claims, Interests, Third Party Claims and any motions to compromise or settle such disputes. Despite the foregoing, if the Bankruptcy Court is determined not to have jurisdiction with respect to the foregoing, or if the Plan Administrator chooses to pursue any Third Party Claim in another court of competent jurisdiction, the Plan Administrator will have authority to bring such action in any other court of competent jurisdiction.

## ARTICLE XII
## ACCEPTANCE OR REJECTION OF THE PLAN;
## EFFECT OF REJECTION BY ONE OR MORE
## IMPAIRED CLASSES OF CLAIMS OR INTERESTS

12.1    ***Impaired Classes of Claims and Interests Entitled to Vote.*** Claimholders and Interestholders in each Impaired Class of Claims or Interests are entitled to vote as a class to accept or reject the Plan. The Debtors will tabulate votes on the Plan.

12.2    ***Acceptance by an Impaired Class.*** In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims or Interests shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds in dollar amount and more than one-half (½) in number of the Allowed Claims or Allowed Interests of such Class that have timely and properly voted to accept or reject the Plan.

12.3    ***Presumed Acceptances by Unimpaired Classes.*** Class 3 Priority Non-Tax Claims are Unimpaired by the Plan. Under section 1126(f) of the Bankruptcy Code, such Claimholders are conclusively presumed to accept the Plan, and the votes of such Claimholders will not be solicited.

12.4    ***Class Deemed to Reject Plan.*** In the event the Court were to conclude that Class 6 Interests were impaired by virtue of the Debtors' estimate that the holders of Common Stock and Other Interests will not receive any distribution, Class 6 would also be conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. In either event, the votes of Class 6 Interestholders will not be solicited.

12.5    ***Non-Consensual Confirmation.*** In the event that less than all classes vote to accept the Plan, the Debtors will seek Confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

12.6    ***Confirmability and Severability of the Plan.*** The confirmation requirements of section 1129 of the Bankruptcy Code must be satisfied. A determination by the Bankruptcy Court that the Plan is not confirmable pursuant to section 1129 of the Bankruptcy Code shall not limit or affect the Debtors' ability to modify the Plan, subject to the consent of the Prepetition Senior Secured Lender and Secured Noteholder, to satisfy the confirmation requirements of section 1129 of the Bankruptcy Code.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

13.1    ***Binding Effect.*** The Plan shall be binding upon and inure to the benefit of the Debtors, the Plan Administrator, all present and former Claimholders, all present and former Interestholders, other parties in interest and their respective successors and assigns.

13.2    ***Modification and Amendments.*** The Debtors may alter, amend or modify the Plan or any Exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing, but any such alteration, amendment, or modification shall require the consent of the Prepetition Senior Secured Lender and the Secured Noteholder, in consultation with the Creditors' Committee. After the Confirmation Date and prior to substantial consummation of the Plan as defined in section 1101(2) of the Bankruptcy Code, the Plan Administrator may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of Claimholders or Interestholders under the Plan; *provided, however*, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

13.3    ***Withholding and Reporting Requirements.*** In connection with the Plan and all instruments issued in connection therewith and distributions thereon, the Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.

13.4    ***Creditors' Committee.*** The Creditors' Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code, and shall perform such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date. From and after the Effective Date, the Creditors' Committee shall exist for the sole purposes of: (a) matters relating to any appeals or other challenges or matters with respect to the Confirmation Order; (b) pursuing the Committee's Professional Claims and reviewing and being heard in connection with all Professional Claims; and (c) appearing before and being heard by the Bankruptcy Court and other courts of competent jurisdiction in connection with the above duties; provided, however, the Debtors shall no longer be responsible for paying any fees or expenses incurred by members of the Creditors' Committee after the Effective Date, including fees and expenses of professionals of the Creditors' Committee, except with respect to (i) pursuing and reviewing their own and all other Professional Claims and (ii) any appeals or other challenges or matters with respect to the Confirmation Order. Upon the conclusion of the foregoing duties, the Creditors' Committee shall automatically dissolve and its members, Professionals and agents shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases or the Plan and its implementation, and the retention or employment of the Creditors' Committee's attorneys and other agents shall terminate. All expenses of Creditors' Committee members and the fees and expenses of their professionals through the Effective Date shall be paid in accordance with the terms and conditions of this Plan and any order of the

38

Bankruptcy Court. Following the Effective Date: (a) the attorneys to the Creditors' Committee shall be entitled to request any reasonable claims for compensation for services rendered or reimbursement for expenses incurred after the Effective Date through and including the dissolution of the Creditors' Committee in connection with the services to the Creditors' Committee with respect to (i) the pursuit of their own Professional Claims and representation of the Creditors' Committee in connection with the review of and the right to be heard in connection with all Professional Claims, and (ii) any appeals or other challenges or matters with respect to the Confirmation Order; and (b) the members of the Creditors' Committee shall be entitled to reimbursement of their reasonable expenses incurred in connection with their exercise of the foregoing duties and responsibilities. The Plan Administrator shall pay, within ten (10) Business Days after submission of a detailed invoice to the Plan Administrator, such reasonable claims for compensation or reimbursement of expenses incurred by the professionals of the Creditors' Committee. If the Plan Administrator disputes the reasonableness of any such invoice, the Plan Administrator or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. The undisputed portion of such reasonable fees and expenses shall be paid as provided herein.

13.5    ***Third Party Claims/Causes of Action.*** Unless otherwise released under a prior Order of the Bankruptcy Court or under the Plan, all Third Party Claims and Causes of Action are hereby preserved for prosecution and enforcement by the Plan Administrator. For the avoidance of doubt, neither the Debtors nor the Plan Administrator shall commence, litigate, prosecute and/or settle any Causes of Action against the Released Parties or any Causes of Action against general unsecured creditors arising from or related to section 547 of the Bankruptcy Code. The Plan Administrator, after consultation with the Plan Administrator Oversight Committee, shall have no obligation to perform an analysis of any Third Party Claims and Causes of Action.

13.6    ***Revocation, Withdrawal or Non-Consummation Right to Revoke or Withdraw.*** The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Effective Date so long as the Debtors obtain the consent of the Prepetition Senior Secured Lender and the Secured Noteholder, in consultation with the Creditors' Committee, for such revocation or withdrawal.

13.7    ***Severability of Plan Provisions.*** If prior to Confirmation any term or provision of this Plan which does not govern the treatment of Claims or Interests or the conditions to the Effective Date is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid and enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.8 **Trustee's Fees**. All fees due and owing under 28 U.S.C. §1930 shall be paid on the Effective Date and thereafter, as due, until the cases are closed, converted or dismissed and final decreed, from the Plan Assets.

13.9 **Notices**. Pursuant to Bankruptcy Rule 2002 and any applicable local Bankruptcy Rules, notice of all post-Confirmation matters for which notice is required to be given shall be deemed sufficient if served upon the U.S. Trustee's Office, counsel to the Debtors, counsel to the Prepetition Senior Secured Lender, counsel to the Secured Noteholder and counsel to the Plan Administrator and all persons on the Debtors' Bankruptcy Rule 2002 service list. With the exception of the Debtors, the Plan Administrator and the United States Trustee, any Person desiring to remain on the Debtors' Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Plan Administrator and the Debtors within thirty (30) days subsequent to the Effective Date. Persons shall be notified of such continued notice requirements in the notice of entry of the Confirmation Order. Persons who do not file a request for continued service shall be removed from the Bankruptcy Rule 2002 service list. Any notice required or permitted to be provided to the Debtors, the Reorganized Debtors, the Creditors' Committee, the Prepetition Senior Secured Lender, or the Secured Noteholder under the Plan shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery, or (c) overnight delivery service, to be addressed as follows:

If to the Debtors or the Reorganized Debtors:

> Klehr Harrison Harvey Branzburg LLP
> 919 N. Market Street, Suite 1000
> Wilmington, DE 19801
> Attn: Domenic E. Pacitti

If to the Plan Administrator:

> Paul Collins
> 733 Brochardt Blvd.
> Knoxville, TN 37934

*with a copy to:*

> Klehr Harrison Harvey Branzburg LLP
> 919 N. Market Street, Suite 1000
> Wilmington, DE 19801
> Attn: Domenic E. Pacitti

If to the Prepetition Senior Secured Lender:

>  Winston & Strawn LLP
>  100 North Tryon Street
>  Charlotte, NC 28202-1078
>  Attn: Felton E. Parrish
>  E-mail address: FParrish@winston.com

If to the Secured Noteholder:

>  Kirkland & Ellis LLP
>  601 Lexington Avenue
>  New York, New York 10022
>  Attn: Joshua A. Sussberg
>  E-mail address: jsussberg@kirkland.com

If to the Creditors' Committee:

>  Otterbourg P.C.
>  Attn: David M. Posner
>  230 Park Avenue
>  New York, NY 10169
>  E-mail address: dposner@otterbourg.com

>  - and -

>  Venable LLP
>  Attn: Jamie L. Edmonson
>  1201 North Market Street
>  Suite 1400
>  Wilmington, DE 19801
>  E-mail address: JLEdmonson@Venable.com

13.10    **Term of Injunctions or Stays.**  Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the Effective Date.

13.11    **Governing Law.**  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware shall govern the construction and implementation of the Plan, any agreements, documents and instruments executed in connection with the Plan, and corporate governance matters.

13.12    **Waiver and Estoppel.**  Each Claimholder or Interestholder shall be deemed to have waived any right to assert that, by virtue of an agreement made with the Debtors and/or their counsel, the Creditors' Committee and/or its counsel, or any other party, its Claim or

41

Interest should be allowed in a certain amount, in a certain priority, secured or not subordinated if such agreement was not disclosed in the Plan, the Disclosure Statement or papers filed with the Bankruptcy Court.

*Remainder of Page Intentionally Left Blank*

42

Dated: September 26, 2014

Respectfully submitted,

Tactical Intermediate Holdings, Inc.
Tactical Holdings Operations, Inc.
Wellco Enterprises, Inc.
Ro-Search Incorporated
Mo-Ka Shoe Corporation
Altama Delta Corporation
Altama Delta (Puerto Rico) Corporation
Massif Holdings, LLC
Massif Mountain Gear Company, LLC

By:    */s/ Carlin Adrianopoli*
       Carlin Adrianopoli
       Chief Restructuring Officer

## EXHIBIT A

### Plan Administrator Agreement

2

## PLAN ADMINISTRATOR AGREEMENT

THIS AGREEMENT is made this ___ day of November, 2014, by and between Paul Collins, as Plan Administrator and the Debtors, as such term is defined in the First Amended Chapter 11 Plan of Liquidation of Tactical Intermediate Holdings, Inc., and its Debtor Affiliates, which has been confirmed by the Bankruptcy Court (together with all Exhibits thereto, the "*Plan*"). Capitalized terms not otherwise defined herein shall have the meaning ascribed in the Plan.

### RECITALS

WHEREAS, on July 8, 2014, voluntary petitions under Chapter 11 of the Bankruptcy Code were filed by the Debtors in the Bankruptcy Court; and

WHEREAS, the Debtors filed the Plan on September 18, 2014; and

WHEREAS, the Plan was confirmed by the Bankruptcy Court by Order entered November [ ], 2014; and

WHEREAS, the Plan provides that the rights and powers of the Debtors under the Plan shall be exercised by a plan administrator in its capacity as the representative of the Debtors (in its capacity as such, the "*Plan Administrator*"); and

WHEREAS, under section 6.2 of the Plan, the Plan Administrator shall have the responsibilities and duties as set forth in the Plan and this Agreement, subject to consent, oversight and consult of the Plan Administrator Oversight Committee as set forth in the Plan and this Agreement;

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, the parties hereto agree as follows:

### ARTICLE I
### PLAN ADMINISTRATOR'S ACCEPTANCE OF POSITION

1.1    Acceptance.  Paul Collins accepts employment as the Plan Administrator and agrees to observe and perform all duties and obligations assigned to it by this Agreement.

1.2    <u>Independent Contractor</u>.  The parties agree that during the term of this Agreement, the Plan Administrator shall be an independent contractor, and not an employee of the Debtors, within the meaning of all federal, state and local laws and regulations governing employment insurance, workers' compensation, industrial accident, labor and taxes.  In addition, the Plan Administrator shall not, by reason of this Agreement, acquire any rights under any benefit plan operated by the Debtors or its affiliates for the benefit of their employees, including, without limitation, (a) any pension or profit-sharing plans or (b) any "employee welfare plans" (as defined in Section 3 of the Employee Retirement Income Security Act of 1974, as amended.)

1.3    <u>Part-Time Position</u>.  The parties anticipate that the Plan Administrator will be able to fulfill her obligations under this Agreement by devoting a portion of each work-day or

work-week to performing the services set forth herein. Accordingly, the Plan Administrator is being retained only on a part-time basis. The parties agree that the Plan Administrator may accept employment elsewhere during the period in which the Plan Administrator is performing services pursuant to this Agreement. The Parties acknowledge that the Plan Administrator shall serve as or may select the Disbursing Agent as set forth in the Plan.

## ARTICLE II
## GENERAL OBLIGATIONS OF THE PLAN ADMINISTRATOR

2.1    Establish Accounts. On the Effective Date or as soon thereafter as practicable, the Plan Administrator shall establish one or more accounts into which shall be deposited all funds for which it is responsible under this Agreement and the Plan and which are not required or permitted to be deposited into any other account, reserve or escrow.

2.2    Distributions. Subject to Article 2.3 of the Agreement, the Plan Administrator shall make distributions on account of and to pay those Allowed Claims for which it is responsible for payment in accordance with and subject to the conditions set forth in the Plan.

2.3    Reserves. The Plan Administrator shall establish and maintain appropriate reserves in consultation with the Plan Administrator Oversight Committee, in accordance with the Plan and this Agreement, with respect to those Claims and expenses for which it is responsible.

2.4    Investments. Pursuant to the Plan, all Cash held by the Debtors, the Plan Administrator or any Disbursing Agent, as the case may be, shall be invested in accordance with section 345 of the Bankruptcy Code or as otherwise permitted by a Final Order of the Bankruptcy Court.

2.5    Liquidation of Assets. In accordance with the Plan, the Plan Administrator shall, in the name of Debtors, liquidate or otherwise dispose of those of Debtors' assets for which it is responsible in a manner reasonably calculated to maximize value for distribution to holders of those Allowed Claims for which it acts as Disbursing Agent.

2.6    Books and Records. Until the termination of his responsibilities under this Agreement or further order of the Bankruptcy Court, the Plan Administrator shall maintain appropriate books and records in accordance with the requirements of Plan.

2.7    No Other Duties. Other than the obligations of the Plan Administrator enumerated above or under the Plan, the Plan Administrator shall have no duties or obligations of any kind or nature respecting implementation of the Plan or this Agreement.

## ARTICLE III
## POWERS AND RIGHTS OF THE PLAN ADMINISTRATOR

3.1    General. The Plan Administrator shall have all powers and rights enumerated below or in the Plan, including, without limitation, those rights and powers enumerated in Article VI of the Plan, subject to consent, oversight and consult of the Plan Administrator Oversight Committee as set forth in the Plan and this Agreement, with respect to the Assets and with

2

respect to Claims, and shall be the sole representative of the Estates within the meaning of 11 U.S.C. § 1123 for all such purposes. The enumeration of the following powers or those listed in Article VI of the Plan shall not be considered in any way to limit or control the power of the Plan Administrator to act as specifically authorized by any other section or provision of this Agreement, the Plan or Bankruptcy Court order.

3.2     Resolution of Disputed Claims. All Disputed Claims shall be resolved by the Plan Administrator in accordance with the Plan and the procedures established by order of the Bankruptcy Court. In accordance with the Plan, and subject to consent, oversight and consult of the Plan Administrator Oversight Committee as set forth therein, the Plan Administrator shall have authority to file and prosecute objections to Claims.

3.3     Books and Records. On the Effective Date, the Plan Administrator shall take possession of such books and records of the Debtors necessary for the resolution of Claims or otherwise useful or necessary to implement the Plan or this Agreement.

3.4     Employees and Agents.  The Plan Administrator is empowered: (a) to elect, appoint, engage, retain and employ on a full time or part time basis any Persons as professionals, agents, representatives, employees, or independent contractors on behalf of the Debtors and their Estates in one or more capacities as is reasonably necessary to enable the Plan Administrator to implement this Agreement and the Plan, after consultation with the Plan Administrator Oversight Committee; (b) subject to the Plan, to pay fees to and to reimburse the expenses of those professionals, employees, agents or independent contractors elected, appointed, engaged, retained or employed by the Plan Administrator; (c) to indemnify the Plan Administrator and his agents, professionals and employees in accordance with this Agreement from any loss (including reasonable attorneys' fees) incurred in connection with the implementation of the Plan other than a loss due to the indemnified party's willful misconduct, gross negligence or fraud; and (d) to prescribe the titles, powers and duties, terms of service and other terms and conditions of the election, appointment, engagement, retention, or employment of such Persons.

3.5     Insurance. The Plan Administrator is hereby authorized to obtain all reasonably necessary insurance coverage for itself, its professionals, agents, representatives, employees, or independent contractors, the Plan Administrator Oversight Committee, the Estates and the Debtors, including, but not limited to, coverage with respect to (i) any property that is or may in the future become an asset and (ii) the liabilities, duties, and obligations of the Plan Administrator and its professionals, agents, representatives, employees or independent contractors and the Plan Administrator Oversight Committee under the Plan and this Agreement, with the cost of such insurance being paid solely from the proceeds of the Estates and shall not be required to post a bond with respect to assets held under this Agreement and the Plan.

3.6     Protection of Assets. The Plan Administrator is hereby authorized to do and to perform any and all acts necessary or appropriate for the conservation and protection of the Assets of the Debtors and the Estate, including acts or things necessary or appropriate to maintain assets held pending sale or other disposition or distribution thereof.

3.7     Authority to Prosecute Actions. The Plan Administrator shall be empowered as the representative of the Estates, but shall have no obligation, to prosecute, in the name of the

3

Debtors, the Estates or the Plan Administrator, or otherwise, all such actions, except for Avoidance Actions and Third Party Claims not otherwise released under the Plan, as may be necessary, appropriate or incident to implementing the Plan or this Agreement, subject to the consent, oversight and consult of the Plan Administrator Oversight Committee, Prepetition Senior Secured Lender, Secured Noteholder, as appropriate, as set forth in the Plan.    All recoveries obtained by the Plan Administrator in respect of such prosecutions shall be distributed pursuant to the terms of the Plan.

3.8    Additional Powers.  The Plan Administrator shall be empowered to do all other acts and things not inconsistent with the provisions of the Plan or this Agreement that the Plan Administrator deems reasonably necessary or desirable with respect to implementing the Plan and this Agreement.

## ARTICLE IV
## THE PLAN ADMINISTRATOR

4.1    Resignation, Death or Removal.  The Plan Administrator may resign, or may be removed for cause upon motion to and order of the Bankruptcy Court, and upon such resignation or removal, the Plan Administrator Oversight Committee may appoint any successor Plan Administrator.

4.2    Continuity.  Unless otherwise ordered by the Bankruptcy Court, the death, resignation, incompetence or removal of the Plan Administrator shall not operate to terminate or remove any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by either of the Plan Administrator.  In the event of the resignation or removal of the Plan Administrator, that Plan Administrator shall promptly execute and deliver such documents, instruments and other writings as may be required by the Bankruptcy Court or reasonably requested by the successor Plan Administrator.

4.3    Compensation.    The Plan Administrator shall be entitled to receive the compensation set forth respectively in Schedule A hereto, and shall be entitled to reimbursement of reasonable out-of-pocket expenses incurred in connection with performing her duties hereunder, on a weekly basis.  The Plan Administrator shall provide to the Plan Administrator Oversight Committee bills for services performed and expenses to be reimbursed.  In the event any person objects to the compensation or reimbursement being sought by the Plan Administrator, within ten (10) Business Days of service of the bill, the matter shall be presented to the Bankruptcy Court for determination. Upon the request of the Plan Administrator, the Bankruptcy Court, after notice and hearing, may, on a prospective basis, alter the amount, terms or consideration of the Plan Administrator's compensation.

4.4    Standard of Care, Indemnification and Exculpation.  The Plan Administrator, its professionals and its employees shall not be personally liable to the Debtors or to the Holder of any Claim or Interest or to any other person except for such of its or their own acts as shall constitute willful misconduct, gross negligence or fraud.  Except for the aforesaid, the Plan Administrator is exonerated, held harmless and indemnified (and may (but neither is required to) maintain insurance for the purposes of such indemnification), in accordance with the Plan. Person seeking to assert claims against the Plan Administrator and its professionals, agents and

4

employees shall have recourse only against the Debtors' Assets and the proceeds thereof, and any insurance purchased with the proceeds of any of the Debtors' Assets.

4.5     Reliance by the Plan Administrator.  The Plan Administrator may conclusively rely, and shall be fully protected in acting upon, any statement, instrument, opinion, report, notice, request, consent, order or other instrument or document which its believes to be genuine and to have been signed or presented by the proper party or parties.  The Plan Administrator may also conclusively rely on information provided to its by agents and employees of the Debtors.  The Plan Administrator may consult with legal counsel and shall be fully protected from any liability except as set forth in Article 4.4 above in respect of any action taken or suffered in accordance with the opinion of legal counsel.  The Plan Administrator shall have the right at any time to seek instructions from the Court concerning the acquisition, management or disposition of the assets for which it is responsible.

4.6     Reliance by Persons Dealing with the Plan Administrator.  In the absence of actual knowledge to the contrary, any Person dealing with the Debtors and their Estates shall be entitled to rely on the authority of the Plan Administrator to act on behalf of the Debtors, and shall have no obligation to inquire into the existence of such authority.

4.7     Duty of Care.  The Plan Administrator shall act for the Estates in a fiduciary capacity as applicable to a board of directors/board of managers, subject to the provisions of the Plan and this Agreement.

## ARTICLE V
## PLAN ADMINISTRATOR OVERSIGHT COMMITTEE

5.1     Authority and Responsibility.  The Plan Administrator Oversight Committee shall have all authority and responsibility set forth in the Plan and this Agreement.  The Plan Administrator Oversight Committee shall have the authority and responsibility to oversee, review and guide the activities and performance of the Plan Administrator and shall have the authority to remove the Plan Administrator in accordance with section 4.1 of this Agreement.

5.2     Appointment of Successor Plan Administrator.  Upon the resignation, death or removal of the Plan Administrator as permitted herein, the Plan Administrator Oversight Committee shall appoint the successor Plan Administrator.   In its discretion, the Plan Administrator Oversight Committee may appoint an interim plan administrator pending its appointment of a permanent successor plan administrator.

5.3     Meetings of the Plan Administrator Oversight Committee.  Meetings of the Plan Administrator Oversight Committee are to be held with such frequency as the Plan Administrator and Members may determine in their reasonable discretion.

5.4     Tenure of Members of the Plan Administrator Oversight Committee.   The authority of the Members will be effective as of the Effective Date and will remain and continue in full force and effect until the termination of the Plan Administrator Agreement as set forth in this Agreement.

PHIL1 3857186v.2

5.5     Resignation.  A Member may resign by giving not less than (10) days' prior written notice thereof to the Plan Administrator and other Members.  Such resignation shall become effective on the later to occur of: (i) the day specified in such notice; and (ii) the appointment of a successor in accordance with the Plan and this Agreement.

5.6     Removal.  A Member may be removed with a unanimous vote of the other Members and Trustee, written resolution of which shall be delivered to the removed Member; provided, however, that such removal may only be made for cause.

5.7     Appointment of Successor Plan Administrator Oversight Committee Member.  In the event of a vacancy on the Plan Administrator Oversight Committee (whether by removal, death or resignation), a new Member may be appointed by the remaining Members to fill the position.  If all Members resign at once, the Trustee, with Bankruptcy Court approval, may appoint new Members.

Reimbursement of Expenses.  The Members shall be entitled to reimbursement of reasonable out-of-pocket expenses incurred in connection with performing their duties hereunder.  At its discretion, a Member may provide to the Plan Administrator an expense reimbursement request for payment.  In the event the Plan Administrator objects to the reimbursement being sought by the Member within ten (10) days of service of the expense reimbursement request, the matter shall be presented to the Bankruptcy Court for determination.

5.1     5.10     Standard of Care, Indemnification and Exculpation.  In general, and subject to the protective provisions of the Plan, the Plan Administrator Oversight Committee shall exercise its responsibilities under the Plan and Plan Administrator Agreement consistent with fiduciary standards.  The Members of the Plan Administrator Oversight Committee shall not be personally liable to the Debtors or to the Holder of any Claim or Interest or to any other person except for such of its or their own acts as shall constitute willful misconduct, gross negligence or fraud.  Except for the aforesaid, the Members of the Plan Administrator Oversight Committee are exonerated, held harmless and indemnified, in accordance with the Plan.  Persons seeking to assert claims against the Members shall have recourse only against the Debtors' Assets and the proceeds thereof, and any insurance purchased with the proceeds of any of the Debtors' Assets, except for acts of omissions of the indemnified Persons that constitute fraud, willful misconduct or gross negligence.

## ARTICLE VI
## TERMINATION

6.1     Subject to further order of the Bankruptcy Court, this Agreement shall terminate on the earlier of (i) thirty (30) days after: (a) the Final Distribution or (b) the date the order granting the final decree in these Chapter 11 Cases becomes a Final Order, whichever is later, and (ii) as otherwise ordered by the Bankruptcy Court.

## ARTICLE VII
## MISCELLANEOUS

7.1     Notices.  All notices, requests or other communications required or permitted to be made in accordance with this Agreement shall be in writing and shall be mailed by first class mail, or delivered by such other means that might be reasonable and appropriate under the circumstances.

> if to the Plan Administrator:
>
>> Paul Collins
>> 733 Brochardt Blvd.
>> Knoxville, TN 37934
>
> with a copy to:
>
>> Domenic E. Pacitti
>> Klehr Harrison Harvey Branzburg LLP
>> 919 Market Street, Suite 1000
>> Wilmington, DE  19801

7.2     Change of Address.  Any person or entity may change the address at which it is to receive notices under this Agreement by furnishing written notice to the parties listed in Article 6 hereof.  Such change of address shall be effective ten (10) Business Days after service of such notice.

7.3     Effectiveness.  This Agreement shall become effective on the Effective Date.

7.4     Governing Law.  This Agreement shall be governed by, construed under and interpreted in accordance with the laws of the State of Delaware.

7.5     Headings.  Sections, subheadings and other headings used in this Agreement are for convenience only and shall not affect the construction of this Agreement.

7.6     Amendments.  This Agreement may be amended from time to time by the Plan Administrator, with the approval of the Bankruptcy Court, after notice to the Creditors' Committee, the Prepetition Senior Secured Lender, the Secured Noteholder and the United States Trustee, and such hearing (if any) as the Court may hold.

7.7     Conflict.  In the event of a conflict between the provisions of this Agreement and the provisions of the Plan, the provisions of the Plan shall govern.

7.8     Jurisdiction.  The Bankruptcy Court shall retain exclusive jurisdiction to hear and determine all conflicts concerning this Agreement and all matters related to the interpretation and implementation of this Agreement.

PHIL1 3857186v.2

**ARTICLE VIII**
**ADDITIONAL PROVISIONS**

8.1     Tax Returns.  The Plan Administrator, on behalf of the Debtors and the Estates, shall cause tax returns and all other appropriate or necessary documents related to municipal, State, Federal, or other tax law to be prepared and filed timely.

8.2     Reports.    Unless otherwise ordered by the Bankruptcy Court, the Plan Administrator shall be responsible for preparing, filing and serving (if applicable) the following reports:

        (a)     Reports to the to the United States Trustee.  The Plan Administrator shall prepare, file, and serve on the United States Trustee such monthly financial reports as may be required by the United States Trustee until such time as a final decree is entered closing these Chapter 11 Cases or the Chapter 11 Cases are converted or dismissed.

        (b)     Status Reports.  The Plan Administrator shall file and serve upon the United States Trustee, the Prepetition Senior Secured Lender, the Secured Noteholder and Plan Administrator Oversight Committee any periodic status report, closing report, application for final decree or other reports or applications in accordance with any post- confirmation order entered in these Chapter 11 Cases pursuant to the Local Bankruptcy Rules for the District of Delaware.

8.3     Fees.  The Plan Administrator shall be obligated solely from Plan Assets to pay timely fees incurred pursuant to 28 U.S.C.§ 1930 (a)(6) until such time as a final decree is entered closing these Chapter 11 Cases, the Chapter 11 Cases are converted or dismissed or the Bankruptcy Court orders otherwise.

8.4     Termination of Responsibilities.  Upon the liquidation of the assets and the payment of funds to all Holders of Allowed Claims, the Plan Administrator may apply to the Bankruptcy Court for an order terminating its duties and responsibilities under this Agreement and the Plan.  Upon the termination of his duties and responsibilities by the Bankruptcy Court, such the Plan Administrator shall have no further obligations hereunder.

8.5     Retention of Jurisdiction.  The Bankruptcy Court shall retain jurisdiction of all disputes arising under this Agreement. Any such disputes shall be resolved by an order of the Bankruptcy Court, which order shall be final and binding, with the Plan Administrator waiving all rights of appeal therefrom.

8.6     Distribution Date.  Each Distribution Date shall be determined by the Plan Administrator.

8.7     Dissolution of the Debtors.  The Plan Administrator shall have authority to effect the dissolution of any one or more of the Debtors under the Plan.

8

    8.8    <u>Other Actions</u>. The Plan Administrator shall have all duties and responsibilities with respect to all causes of action of any of the Debtors or the Estates as set out in the Plan.

**Tactical Intermediate Holdings, Inc. and its Debtor Affiliates**

By:_____

            Carlin Adrianopoli

Its:    Chief Restructuring Officer

**Plan Administrator**

By:_____

            Paul Collins

**Consented and Agreed to:**

**Official Committee of Unsecured Creditors**

By:_____

Its: _____

**PREPETITION SENIOR SECURED LENDER**

By:_____

Its: _____

**SECURED NOTEHOLDER**

By:_____

Its: _____

PHIL1 3857186v.2

## SCHEDULE A

1. **COMPENSATION**

   The Plan Administrator will submit invoices on a weekly basis for payment. Such invoices shall include any fees and expenses incurred by the Plan Administrator. Fees for this assignment will be based on an hourly rate of $150.00 per hour.

2. **COMPUTATION OF HOURS; RECORDKEEPING**

   The Plan Administrator shall maintain daily, hourly record of time and expenses which shall be set forth in the weekly invoice.

3. **REIMBURSEMENT OF EXPENSES**

   The Plan Administrator shall be reimbursed for actual and necessary out-of-pocket expenses incurred, including, but not limited to, data processing and communications charges, copying and courier services and travel and lodging.